SHIRLEY GELDERT, MELANIE GELDERT, ROBIN MARGARET GELDERT, MICHAEL DEAN GELDERT, and SHIRLEY GELDERT, Executrix of the Estate of WALTER L. H. GELDERT, Plaintiffs-Appellants, *v.* STATE OF HAWAII, Defendant-Appellee

NO. 7264

(CIVIL NO. 3811)

AUGUST 16, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

This is a wrongful death action tried by the court below without jury. Plaintiffs appeal the judgment in favor of defendant State of Hawaii (State).

The paramount issue is whether the trial court's findings of fact (and the conclusions of law based thereon) that the decedent was negligent and that his negligence was greater than the negligence of all defendants in the case combined were clearly erroneous. The subsidiary issues are whether the trial court erred (1) in receiving certain answers to interrogatories, in evidence, and (2) in taxing against plaintiffs the costs of certain depositions. We affirm, except as to the issue of taxation of costs.

On June 18, 1974, Walter Geldert and his two friends, Charles Menning and Dennis Schmitz, transported Geldert's Hobie Catamaran (hobie cat) and a new aluminum mast by truck to Keauhou Pier, Kona, Hawaii. The pier and the adjacent small boat launching ramp were owned, controlled and maintained by the State. Abutting the mauka (meaning "toward the mountain") boundary of the pier and the launching ramp were a road and appurtenant rights of way

owned, controlled and maintained by the County of Hawaii (County). There were telephone poles to the north and south of the pier, both poles being on the County's right of way. Both poles were owned, controlled and maintained by Hawaii Electric Light Company, Inc. (HELCO). Suspended between the two poles in a north-south direction were a telephone line, a neutral electrical line and a 7.2 kv. high voltage line. The telephone line was at a lower level than the electrical lines. Both electrical lines were located parallel to each other, approximately 25 feet above ground and owned, controlled and maintained by HELCO.

Coast Catamaran Corp., a California corporation, had manufactured and sold the hobie cat and new mast to Geldert.

Geldert, Menning and Schmitz unloaded the hobie cat from the truck and set up the aluminum mast on it. It was raining, and the hobie cat, including the mast and sail, the pavement of the pier's parking lot and the three men were wet. Observing that the lines would block their preferred route to the launching ramp, the men decided to move the hobie cat toward the ramp in another direction, keeping the moving mast parallel to and makai (meaning "toward the sea") of the lines suspended between the two telephone poles.

The three men lifted the hobie cat and after taking a few steps received an electrical shock. The mast of the hobie cat had been placed in such a position to the high voltage electrical line that an arc of electricity had traveled from the line to the mast. Geldert and Menning were electrocuted in the accident. Schmitz was the sole survivor.

On May 14, 1975, plaintiffs (widow and children of Geldert and executrix of his estate) filed their complaint against HELCO and the State. On April 21, 1976, the County was brought into the case as a third-party defendant. On June 15, 1977, Coast Catamaran was named a fourth-party defendant.

On December 6, 1977, plaintiffs settled with HELCO, the County and Coast Catamaran.

On December 6, 1977, a bench trial commenced. On May 1, 1978, a judgment in favor of the State and against plaintiffs was entered.

On September 29, 1978, the court entered its order denying plaintiff's motion for new trial and approving the State's bill of costs, with modifications.

I.

Plaintiffs contend that the following numbered Findings of Fact were clearly erroneous:

20. None of the three men were vocally guiding the movement of the boat nor were any of them watching the approach to the wires.

33. Prior to the accident, Walter Geldert saw the lines, knew or should have known there was electricity carried by those lines and deliberately, intentionally, and volitionally assumed the risk with full knowledge of the danger of electrocution.

34. Walter Geldert was grossly negligent and reckless and his gross negligence and recklessness was the proximate cause of Plaintiffs' damages and his injuries and death.

39. Defendants were negligent in the following order and percentages: Coast Catamaran, 20%; HELCO, 10%; the State of Hawaii, 10%; and Hawaii County, 5%.[1]

40. The negligence of all the Defendants combined was 45% and the negligence of the Plaintiffs was 55%.[2]

Plaintiffs further contend that the court erred in making Conclusion of Law No. 4, which reads as follows:

4. The Plaintiffs' negligence was greater than the aggregate negligence of the Defendants.

When findings of fact of a trial court are challenged, Rule 52(a), Hawaii Rules of Civil Procedure (1972) (HRCP), provides that they "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credi-

---

[1] Finding of Fact No. 39 originally read as follows:
39. Defendants were negligent in the following order: Coast Catamaran, HELCO, the State of Hawaii, and Hawaii County. Among the defendants, Coast Catamaran had the greater negligence and Hawaii County had the least negligence.
By the Order Clarifying Findings of Fact and Conclusions of Law filed on September 29, 1978, Finding of Fact No. 39 was amended to read as set forth in the text.

[2] Finding of Fact No. 40 originally read as follows:
40. The negligence of all the Defendants combined was less than the negligence of the Plaintiffs.
By the Order referred to in footnote 1, Finding of Fact No. 40 was amended to read as set forth in the text.

bility of the witnesses." Findings of fact are clearly erroneous unless there is substantial evidence in the record. *Shoemaker v. Takai*, 57 Haw. 599, 561 P.2d 1286 (1977). "Substantial evidence is credible evidence which is of sufficient quantity and probative value to justify a reasonable man in reaching a conclusion." *Shinn v. Yee, Ltd.*, 57 Haw. 215, 219, 553 P.2d 733, 737 (1976); *Yorita v. Okumoto*, 3 Haw. App. 148, 643 P.2d 820 (1982). Reviewing the evidence in the light of the foregoing principles, we cannot conclude that the findings are clearly erroneous.

### A.

There is sufficient evidence in the record to support Finding of Fact No. 20. On cross-examination Schmitz testified as follows:

Q. [Mr. Chang] Now, after all three of you had lifted this Hobie Cat, was there anything said amongst yourselves?

A. No, none. Nothing that I recall.

Q. Did anyone say, "let's move," or anything to that effect?

A. Not that I recall, no.

\* \* \* \* \*

Q. When you were carrying this Hobie Cat, sir, you weren't looking up?

A. No.

Q. Where were you looking?

A. I don't recall. I — I would seem to think that I may be looking down.

Q. At no time, after you lifted this Hobie Cat, were you looking up?

A. Not that I recall, no.

\* \* \* \* \*

Q. Now, did anybody give you directions as to how to avoid the lines?

A. I did not hear any directions, no.

Q. Did anyone shout out instructions to the effect, "move closer" or "don't move too fast" or "move to the left" or "right," anything like that? Do you recall?

A. No, I don't recall.

\* \* \* \* \*

Q. Do you know if any of them were looking up?

A. I don't know, no.

Q. All of you knew that the wires were there, didn't you?

A. Yes.

Q. But none of you — but you don't know of anybody who was looking up?

A. No, I don't.

The foregoing testimony indicates that the court's finding that "none of the three men were vocally guiding the movement of the boat nor were any of them watching the approach to the wires" was not clearly erroneous.

### B.

Likewise, we find that Findings of Fact Nos. 33, 34, 39 and 40 are supported by sufficient evidence in the record.

Schmitz testified on cross-examination as follows:

Q. [Mr. Chang] Now, as you testified earlier, the surface of the pier was wet; the mast was wet; and the sail was wet; and all three of you were wet. And you stood there after having the mast erected; you stopped; you looked mauka and up, and you saw the lines, and you discussed which direction and how you should carry the Hobie Cat; that's correct, isn't it?

A. Yes, the discussion was made as to which direction we were going to head in.

Q. And as a matter of fact, sir, there was discussion to about possibly tilting the mast, tipping the mast so that it would go under the lines and moving it toward the launch ramp; isn't that correct?

A. There was somewhat of a discussion—

Q. To that effect?

A. To that effect, yes.

Q. Isn't it true, sir, that you had earlier made a statement in your deposition that it was Walter Geldert who decided on what route to take?

A. In the deposition, if I recall, the three of us concluded upon which direction we were going to take, and the question was asked at the end, "Who made the final decision?" And I agreed, "Yes, Walter made the final decision."

Q. And that is true, isn't it?

A. Yes.

\* \* \* \* \*

Q. ... on that occasion, sir, you knew, did you not that electric wires was [sic] a practice in the community, that electric wires would be either on the ground or overhead?

A. Yes.

Q. And you knew that these electric wires were suspended from telephone poles, didn't you?

A. Yes.

\* \* \* \* \*

Q. And at that time [in the hospital after the accident], too, you also told him [a police officer], did you not, that we saw the overhead electrical lines, and we were trying to avoid them?

A. That's correct. I made that statement.

\* \* \* \* \*

Q. And in that statement — and in that written statement [made by Schmitz for his attorney four or five months after the accident] you said, "We got ready to move the boat when we noticed the overhead power lines."

A. That's correct.

Furthermore, Geldert "was a marine engineer by education and training and made an income from renovating old and constructing new homes mostly through his own labor; he was knowledgeable about the properties and dangers of electricity."[3]

Thus, the record supports the court's findings that Geldert saw the lines and knew or should have known that those lines carried electricity, and that they were dangerous, especially when the pier, the hobie cat and he were wet. Under such circumstances, having selected the mode and route of moving the hobie cat to the launching ramp, he was negligent.

Plaintiffs argue that some of Schmitz' testimony and reasonable inferences therefrom contradict the court's findings. At the time he testified, Schmitz had his own lawsuit for damages arising from the same accident pending in court. He was not a disinterested or unbiased witness. It was for the trial court to determine to what

---

[3] Finding of Fact No. 11 which was not appealed.

extent Schmitz was worthy of credit and what part or parts of his testimony should be accepted or rejected. *Shinn v. Yee, Ltd., supra; Title Guaranty Escrow Services, Inc. v. Powley,* 2 Haw. App. 265, 630 P.2d 642 (1981).

Federal courts, in many cases, have held "that findings of negligence — and of contributory negligence — are to be tested by the 'clearly erroneous' standard" under Rule 52(a), Federal Rules of Civil Procedure. 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2590, at 762-63 (1971). *See McAllister v. United States,* 348 U.S. 19 (1954). An appellate court "should exercise considerable restraint in reviewing the conclusion of the fact-finder" on the subject of negligence. *Pacheco v. Hilo Electric Light Co.,* 55 Haw. 375, 384, 520 P.2d 62, 68 (1974). We hold that the same standard applies to findings of triers of fact on comparative negligence.

We conclude that the trial court was not clearly erroneous in its findings of degrees of negligence of Geldert imputed to plaintiffs, Coast Catamaran, HELCO, the State and the County, respectively. After reviewing the entire evidence, we are not left with a firm conviction that the trial court committed a mistake. *Kim v. State,* 62 Haw. 483, 616 P.2d 1376 (1980). Based on findings which we have upheld, the conclusion of law that Geldert's negligence imputed to plaintiffs was greater than the aggregate negligence of the defendants necessarily follows.

## C.

Hawaii is a comparative negligence state.[4] Contributory negligence in itself does not bar recovery in a negligence action.[5] Plaintiffs claim that the doctrines of assumption of risk and gross negligence are principles applicable in the field of contributory negligence to bar recovery for damages. They contend that the court utilized these doctrines in Findings of Fact Nos. 33 and 34 to the prejudice of plaintiffs. We disagree.

We have no case law in our jurisdiction equating assumption of

---

[4] Hawaii's comparative negligence law is found in § 663-31, Hawaii Revised Statutes (1976), which became effective on July 14, 1969.

[5] HRS § 663-31(a).

risk with contributory negligence. In *Bulatao v. Kauai Motors, Ltd.,* 49 Haw. 1, 406 P.2d 887 (1965), *reh'g denied,* 49 Haw. 42, 408 P.2d 396 (1965), the court held that no separate jury instruction on assumption of risk was required, since the facts of the case presented nothing to distinguish the asserted defense of assumption of risk from that of contributory negligence and instructions had been given on the latter doctrine. The court recognized the differences between the defenses of contributory negligence and assumption of risk as set forth in RESTATEMENT (SECOND) OF TORTS § 496A comment d (1965), and reserved "further questions as to the right to instructions on assumption of risk until a case arises in which a meaningful difference in the two defenses appears." *Bulatao,* 49 Haw. at 15, 406 P.2d at 895, n. 10.

We need not determine whether assumption of risk equals contributory negligence and thus cannot be applied in a comparative negligence case to bar recovery. Here, the use of the words "assumed the risk" in Finding of Fact No. 33 did not preclude the court from applying the comparative negligence law and allocating degrees of negligences to all parties involved in the case, which it actually did in Finding of Fact No. 39.

In Finding of Fact No. 34, the court characterized Geldert's negligence to be "grossly negligent." Such characterization related to the comparative magnitude of his negligence, which the court found to be 55%. We cannot conclude that the court erroneously applied the doctrine of gross negligence to bar recovery by plaintiffs.

## II.

Plaintiffs objected to the admission of Exhibits T-1, T-2 and T-3 (answers to interrogatories by Coast Catamaran), Exhibits R-1, R-2, R-3 and R-4 (answers to interrogatories by HELCO) and certain answers to interrogatories by plaintiff Shirley Geldert, being Exhibits V-1, V-2, V-3, V-4 and V-5, on the grounds of irrelevancy and hearsay.

As to Exhibits T-1, T-2, T-3, R-1, R-2, R-3 and R-4, we deem it unnecessary to analyze the objections because of plaintiffs' failure to show prejudicial error. "The rule in this jurisdiction is that an error in admission of evidence is not reversible unless the appellant is able to show that the alleged inadmissible evidence influenced the decision of the trial judge and the decision therein was insupportable by

other evidence." *Lennen & Newell v. Clark Enterprises, Inc.,* 51 Haw. 233, 238, 456 P.2d 231, 235 (1969). Plaintiffs failed to do this.

The depositions of Douglas Campbell, William Sanford Banks and Hobie Alter, all employees of Coast Catamaran, were stipulated into evidence. Jitsuo Niwao, David Byrne, Milton Terazono, Gary Yokoyama, and John Corbelli, employees of HELCO, testified at trial. The findings of the court were supported by other evidence than the answers to interrogatories, the admissibility of which was challenged.

We are aware of the caveat in Rule 33(b), HRCP, that answers to interrogatories may be used at trial "to the extent permitted by the rules of evidence." At the time of the trial below, the evidential rule was that extrajudicial statements of a party-opponent, when offered against the same, are universally deemed admissible at trial as substantive evidence of the fact or facts stated. *Christensen v. State Farm Auto Insurance,* 52 Haw. 80, 470 P.2d 521 (1970). *See also Kekua v. Kaiser Foundation Hospital,* 61 Haw. 208, 601 P.2d 364 (1979). This is an exception to the hearsay rule.[6] Exhibits V-1, V-2, V-3, V-4 and V-5, being statements of a party plaintiff, were admissible against her at trial. An examination of these exhibits reveals their relevancy to the issues in dispute in the case.

We find no error in the court's admission of such evidence.

### III.

Plaintiffs object to the taxation of certain deposition costs against them because they were not used during the trial.

We do not agree with the State that costs of all depositions are taxable in favor of the prevailing party. Hawaii Revised Statutes (1976) § 624-35 provides that "costs of depositions *may* be taxed in the bill of costs as provided by Section 607-9" (emphasis added). In turn, HRS § 607-9 states that all actual disbursements deemed reasonable by the court *may* be allowed in taxation of costs. We are inexorably led to the conclusion that the cost of depositions is taxable when deemed reasonable, and the trial court has the discretion of determining what is reasonable.

---

[6] To the same effect is Rule 803(a)(1), Hawaii Rules of Evidence, Chapter 626, HRS (effective January 1, 1981).

However, we disagree with plaintiffs who equate reasonableness with actual use during trial. We believe that the reasonableness test should be whether the depositions were "necessarily obtained for use in the case."[7] The trial court's determination of whether a deposition is necessarily obtained for use in the case depends upon a factual evaluation of the case by it in terms of the case's progress in court. *Jeffries v. Georgia Residential Finance Authority*, 90 F.R.D. 62 (N.D. Ga. 1981). For example, depositions used in the successful motion for partial summary judgment were deemed reasonably necessary for use in the case. *Miller v. City of Mission, Kansas*, 516 F.Supp. 1333 (D. Kan. 1981).

Other than disallowing the costs of partial trial transcripts, the court allowed the taxation of all costs of depositions. The record does not disclose whether the court believed that all deposition costs were taxable under HRS §§ 624-35 and 607-9 or whether it applied any test of reasonableness. We reverse and remand for this reason.

The depositions of Banks, Alter and Campbell were stipulated into evidence and that of Schmitz was utilized by the State in impeaching him while on the witness stand. Their costs are properly taxable. Upon remand, the court should determine whether the other depositions were necessarily obtained for use in the case.

We affirm the judgment and that part of the Order of September 29, 1978 denying plaintiffs' motion for a new trial. We reverse the Order as to the State's bill of cost and remand for further proceedings in accordance herewith.

*Matthew T. Ihara (Stanley S. Mah* with him on briefs) for plaintiffs-appellants.

*Mario R. Ramil (Melvyn M. Miyagi* on brief) Deputy Attorney General, State of Hawaii, for defendant-appellee.

---

[7] *See* 28 U.S.C. § 1920 which provides, in part, as follows:

A judge or clerk of any court of the United States may tax as costs the following:

\* \* \* \* \*

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; . . . .