ROBERT WAKEFIELD MIST and MARTHA A. MIST, Plaintiffs-Appellants, *v.* WESTIN HOTELS, INC., A Delaware corporation dba MAUNA KEA BEACH HOTEL, and MAUNA KEA PROPERTIES, INC., Defendants-Appellees, and JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-5, ROE NON-PROFIT CORPORATIONS 1-10, and ROE GOVERNMENTAL ENTITIES 1-5, Defendants

NO. 11317

(CIVIL NO. 81814)

JUNE 3, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

Martha A. Mist, plaintiff-appellant, appeals the trial court's judgment denying recovery on her claim for loss of consortium, and order awarding certain costs to Westin Hotels, Inc. and Mauna Kea Properties, Inc., defendants-appellees.[1]

On August 22, 1981, Robert W. Mist ("Robert") and Martha A. Mist ("Martha") were staying at the Mauna Kea Beach Hotel, one of defendants. Sometime during the afternoon of that day, while swimming in the ocean waters adjacent to the hotel, Robert suffered serious injuries resulting in permanent quadraplegia.

Prior to trial, Martha had filed a motion in limine requesting non-imputation[2] of Robert's negligence, if any, unto her claim against defendants for loss of consortium. The trial court, by applying the ruling of *Towse v. State*, 64 Haw. 624, 647 P.2d 696 (1982), denied the motion.

After trial and by special interrogatory, the jury determined that Robert sustained damages in the aggregate amount of $3,360,000. The jury also determined that Robert was 80% at fault and that defendants were 20% at fault. Judgment was entered against Robert and in favor of defendants.

In a separate interrogatory, the jury determined that Martha sustained damages for loss of consortium in the amount of $1,000,000. In view of the denial of Martha's motion in limine, the trial court ruled that Martha "take nothing" and entered judgment against her and in favor of defendants.

---

[1] Appellant's husband, Robert W. Mist, is not a party to this appeal.

[2] Martha employed the term "imputed" contributory negligence. Imputed as used in legal phrases means "attributed vicariously." Black's Law Dictionary, 5th ed. 1979. In the context of a loss of consortium claim, imputed contributory negligence is inapplicable. *See Maidman v. Stagg*, 82 A.D.2d 299, ___, 441 N.Y.S.2d 711, 715. Although the term "imputed" was also used by the trial court, it reached the correct result, and thus there was no error. *See Shea v. City and County of Honolulu*, 67 Haw. 499, 692 P.2d 1158 (1985). *See also* 5 Am. Jur. 2d, *Appeal and Error*, § 785, pp. 227-28 (1962).

By order filed and dated April 2, 1986, the trial court allowed certain costs in the amount of $18,099.39 to defendants.

I.

The dispositive issue is whether Martha's claim for loss of consortium is barred under our comparative negligence statute, Hawaii Revised Statutes (HRS) § 663-31, when her husband's negligence is greater than that of defendants. We hold that Martha's claim for loss of consortium is barred.

In 1969 by Act 227, 1969 Session Laws of Hawaii,[3] the Legislature enacted our modified comparative negligence statute. The prior rule of law in this jurisdiction was that of contributory negligence. *Bissen v. Fujii,* 51 Haw. 636, 466 P.2d 429 (1970); *Young v. Price,* 50 Haw. 430, 442 P.2d 67 (1968). The doctrine of contributory negligence, as perceived by the Legislature, was "unfair" where any degree of negligence on the part of the injured plaintiff would completely bar his or her recovery. Hse. Stand. Comm. Rep. No. 397, in 1969 House Journal, at 778; Sen. Stand. Comm. Rep. No. 849, in 1969 Senate Journal, at 1194. The underlying purpose of the comparative negligence statute "was to allow one party at fault in an accident resulting in injury to be recompensed for the damages attributable to the fault of another if the former's negligence was not the primary cause of the accident." *Wong v. Hawaiian*

---

[3] Section 663. Contributory negligence no bar; comparative negligence; findings of fact and special verdicts. (a) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) The degree of negligence of each party, expressed as a percentage.

(c) Upon the making of the finding of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the verdict in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made, provided, however, that if the said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court will enter a judgment for the defendant.

*Scenic Tours, Ltd.,* 64 Haw. 401, 405, 642 P.2d 930, 933 (1982) (per curiam).[4]

Presently, our comparative negligence statute reads:

§ 663-31 Contributory negligence no bar; comparative negligence; findings of fact and special verdicts. (a) Contributory negligence shall not bar recovery in any action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) The degree of negligence of each party, expressed as a percentage.

(c) Upon the making of the findings of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the award in proportion to the

---

[4] Prior to the decision of *Wong v. Hawaiian Scenic Tours, Ltd.,* the Legislature enacted the following amendments to HRS § 663-31.

Act 152, 1975 Session Laws of Hawaii, provided "that in cases where the negligence of the plaintiff and defendant are equal, recovery [by the plaintiff] would not be barred." Hse. Stand. Comm. Rep. No. 772, in 1975 House Journal at 1309; Sen. Stand. Comm. Rep. No. 489, in 1975 Senate Journal at 1020.

Act 161, 1976 Session Laws of Hawaii, provided "that where there are two or more defendants, the degree of negligence of the injured person expressed as a percentage should be compared against the aggregate negligence of the defendants expressed as a percentage rather than against each one of them individually." Subsection (d) was added as follows: "The court shall instruct the jury regarding the law of comparative negligence where appropriate." Sen. Conf. Comm. Rep. No. 21, in 1976 Senate Journal at 848.

amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.

(d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

It is significant to note that the Legislature in enacting our comparative negligence statute and in making subsequent amendments thereto, did not specifically intend to alter the judicially created derivative action for loss of consortium. The word derivative has been defined as "[t]hat which has not its origin in itself, but owes its existence to something foregoing." Black's Law Dictionary, 5th ed. 1979. "It is generally accepted that the action for loss of consortium is a derivative action, i.e., the action by the spouse for loss of consortium is derivative of the action for damages by the injured spouse . . . . Hence, where the initial claim of injury cannot be maintained the derivative action of loss of consortium must also fail." *Towse v. State*, 64 Haw. at 637, 647 P.2d at 705 (citations omitted).[5]

## II.

Traditionally, a loss of consortium action belonged to the husband which was based "on his interest in the marital society of his wife, apart from his interest in her services." II Harper, James and Gray, *The Law of Torts*, § 8.9, p. 551 (2d ed. 1986). It was not until the mid-twentieth century that the courts began to recognize that the wife's "interest in the marriage relation is co-extensive with that

---

[5] In *Towse*, the loss of consortium claimants were the wives of the plaintiffs-prison guards. Their husbands' primary action alleged defamation and false imprisonment claims against defendants, Doi, Chang and Amemiya. The wives' secondary action alleged a loss of consortium from the asserted defamation suffered by their husbands.

The court affirmed the trial court's granting of summary judgment in favor of defendants on the defamation and false imprisonment claims of plaintiffs-prison guards. After having determined summary judgment had been properly granted on the defamation claims, the court found that summary judgment in favor of defendants on the loss of consortium claims was also proper.

of her husband," and permitted her recovery for loss of consortium as a result of negligent injury to her husband inflicted by a third party. *Hitaffer v. Argonne Co.,* 87 U.S. App. D.C. 57, ____, 183 F.2d 811, 817 (D.C. Cir. 1950), *cert. denied,* 340 U.S. 852, 71 S. Ct. 80, 95 L. Ed. 624, *overruled on other grounds* in *Smither & Co., Inc. v. Coles,* 100 U.S. App. D.C. 68, 242 F.2d 220 (D.C. Cir. 1957), *cert. denied,* 354 U.S. 914, 77 S. Ct. 1299, 1 L. Ed. 2d 1429. *See also* Harper, James and Gray, *supra,* at 558; Prosser and Keeton, *The Law of Torts,* § 125, pp. 931-32 (5th ed. 1984).

Consortium has been described in general terms as "affection, society, companionship and sexual relations." *Hopson v. St. Mary's Hospital,* 176 Conn. 485, ____, 408 A.2d 260, 261 (1979). *See also Thill v. Modern Erecting Company,* 284 Minn. 508, 170 N.W.2d 865 (1969) ("comfort, companionship, and commitment to the needs of each other"); *Millington v. Southeastern Elevator Co.,* 22 N.Y.2d 498, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968) ("concept of consortium includes not only loss of support or services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more").

It is evident from all of the aforesaid elements comprising consortium, there is a "conceptualistic unity" of marital interests, *Hitaffer,* 87 U.S. App. D.C. at ____, 183 F.2d at 814, which forms the basis of the legal right for a loss of consortium claim. This legal right emerges and is derived from the marital relationship. *See* Prosser and Keeton, *supra* at 932. Further, it has been stated that "[t]he basis for recovery for loss of consortium is 'interference with the continuance of a healthy and happy marital life' and 'injury to the conjugal relation.'" *Eggert v. Working,* 599 P.2d 1389, 1391 (Alaska 1979). *Accord Lee v. Colorado Dept. of Health,* ____ Colo. ____, 718 P.2d 221 (1986).

Thus, there must be a tort which gives rise to a cause of action that must be maintained by the injured spouse in order for the non-injured spouse to claim a loss of consortium. In other words, the loss of consortium claim is dependent upon the negligent injury of the other spouse who has the primary tort cause of action. *E.g., Eggert v. Working,* 599 P.2d 1389 (Alaska 1979); *Maidman v. Stagg,* 82 A.D.2d 299, 441 N.Y.S.2d 711 (1981).

Prior to the advent of comparative negligence, "contributory negligence was a complete defense to a negligence action, [and

thus,] a spouse's claim for loss of consortium was barred by the contributory negligence of the spouse who suffered physical injuries." *Eggert,* 599 P.2d at 1390; *Lee,* 718 P.2d at 230; *Runcorn v. Shearer Lumber Products, Inc.,* 107 Idaho 389, ____, 690 P.2d 324, 329 (1984). *See* 21 A.L.R.3d 469 (1968).

Under HRS § 663-31, contributory negligence is no longer a complete defense or total bar to a tort claim. The Legislature enacted a modified comparative negligence statute for our jurisdiction which bars recovery when the negligence of the plaintiff is greater than the defendant or defendants, and reduces recovery against the defendant or defendants by the proportion of fault of the negligent plaintiff. In essence, the "unfairness" of the common law doctrine of contributory negligence has been tempered in an effort to enhance the notion of fairness and justice.

Most of the criticism targeted at the "derivative liability principle" originated prior to the advent of the comparative negligence doctrine.[6] Some courts have recognized a loss of consortium claim as a separate and independent cause of action. The basic premise for this recognition is that the loss of consortium claimant has separate and different interests, i.e., enjoyment of marital relations such as procreation and copulation, apart from the injured spouse, and that the loss of consortium claimant suffers a personal as well as a different injury which is independent from the negligence of the injured spouse and unaffected by the defenses that would bar or modify the injured spouse's tort action. *E.g., Macon v. Seaward Construction Co., Inc.,* 555 F.2d 1 (lst Cir. 1977); *Fletch v. General Rental Co.,* 383 Mass. 603, 421 N.E.2d 67 (1981); *Lantis v. Condon,* 95 Cal. App. 3d 152, 157 Cal. Rptr. 22 (1979); *Christie v. Maxwell,* 40 Wash. App. 40, 696 P.2d 1256 (1985).

A majority of comparative negligence jurisdictions, however, continue to follow the "traditional view," Prosser and Keeton, *supra,* at 938, and treat the loss of consortium as a derivative claim. As a result, the comparative negligence of the injured spouse either reduces or bars recovery on the other spouse's loss of consortium

---

[6] The criticism by two commentators in their earlier works, I Harper and James, *The Law of Torts,* § 23.8 (1956), and Prosser, *Handbook of the Law of Torts,* § 125 (4th ed. 1971), has been apparently significantly retracted in their later works. *See* II Harper, James and Gray *supra,* at pp. 555-56. Prosser and Keaton, *supra,* at pp. 938-39.

claim. *E.g., Ferguson v. Ben M. Hogan Co.,* 307 F. Supp. 658 (W.D. Ark. 1969); *Eggert v. Working,* 599 P.2d 1389 (Alaska 1979); *Nelson v. Busby,* 246 Ark. 247, 437 S.W.2d 799 (1969); *Hopson v. St. Mary's Hospital,* 176 Conn. 485, 408 A.2d 260 (1979); *Thill v. Modern Erecting Co.,* 284 Minn. 508, 170 N.W.2d 865 (1969); *White v. Lunder,* 66 Wis. 2d 563, 225 N.W.2d 442 (1975); *Weaver v. Mitchell,* 715 P.2d 1361 (Wyo. 1986); *Maidman v. Stagg,* 82 A.D.2d 299, 441 N.Y.S.2d 711 (1981); *Hamm v. City of Milton,* 358 So. 2d 121 (Fla. Dist. Ct. App. 1978); *Scattaregia v. Shin Shen Wu,* 343 Pa. Super. 452, 495 A.2d 552 (1985). *See also* 25 A.L.R.4th 118 § 3, pp. 125-28 (1983).

In view of the basis upon which the loss of consortium claim arises and the significant number of jurisdictions that continue to treat it as derivative, we do not deviate from our prior ruling in *Towse v. State,* 64 Haw. 624, 647 P.2d 696 (1982). Therefore, we refuse to recognize the loss of consortium claim as a separate and independent cause of action and continue to treat it as derivative.

In the present case, by attributing the proportion of Robert's degree of fault to Martha's loss of consortium claim, we advance the doctrine of fairness to the average person in the context of a primary tort action and the secondary claim for loss of consortium under our comparative negligence statute. It may be argued that it is unfair for the non-negligent spouse's claim for loss of consortium to be reduced or barred by the degree of negligence of the other spouse but without an incapacitating injury of one spouse there could be no loss of consortium to the other spouse. It would indeed be illogical and contrary to common sense to allow the secondary claimant full recovery when the primary claimant would be barred.

Furthermore, an injured spouse who negligently contributes to his or her incapacitating injury, in turn, harms not only the marital interest of the other spouse, but also affects the unity of the familial entity which is in fact an "economic unit."[7] *Eggert v. Working,* 599

---

[7] In *Peters v. Peters,* the court in discussing the doctrine of interspousal tort immunity stated that "Hawaii like all other states no longer regards husband and wife as an indivisible legal unit for most purposes." 63 Haw. 653, 657-58, 634 P.2d 586, 589. We need not address the question whether for purposes of loss of consortium the husband and wife is a legal unit since we do not mean to imply nor suggest the term "economic unit" to refer to the husband and wife as a legal unit. It is a factual one rather than a legal one. Both husband and wife contribute their financial resources in providing themselves with a certain level of subsistence. It is difficult to imagine that a gain or loss by either spouse will not be shared by both.

P.2d at 1389. It is entirely reasonable to attribute the proportion of fault of one spouse who contributed to the harm affecting the economic unit to the other spouse's claim for damages, i.e., loss of consortium. Otherwise, it would be unfair for the third-party tortfeasor to be subject to a claim unaffected by one spouse's contributory causal negligence resulting in the incapacitating injury. *See Ross v. Cuthbert,* 239 Or. 429, 397 P.2d 529 (1964). Thus, the loss of consortium claim should be subject to the partial defense of comparative negligence.

We hold that Martha's loss of consortium claim is a derivative action subject to HRS § 663-31. Under that statute, Martha's loss of consortium claim must fail in view of Robert's degree of fault being greater than the defendants. *Towse v. State,* 64 Haw. at 637, 647 P.2d at 705.

### III.

Martha next contends that defendants were not the prevailing parties and therefore, not entitled to costs. In the alternative, Martha contends that the trial court abused its discretion in determining the reasonableness of the costs taxed. We agree to the latter but not to the former.

On January 24, 1986 a hearing was held regarding the taxation of costs. Defendants submitted as costs the amount of $26,733.57. During the hearing the trial court deleted some of the cost items which resulted in the final sum of $18,099.39. Transcript of January 24, 1986, pp. 44-48. The trial court also reduced in half the requested expert witness fees of $5,711.50 to $2,855.75. The most significant cost items were for the depositions of plaintiff's experts, medical providers and others totalling $12,132.96.

Generally, taxation of costs is governed by HRS § 607-9 and Hawaii Rules of Civil Procedure (HRCP) Rule 54(d).[8]

---

[8] Rule 54(d) provides:

(d) Costs. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

HRS § 607-9 provides:

Cost charges exclusive; disbursements. No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

All actual disbursements sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.

"The trial court is vested with discretion in allowing or disallowing costs but this discretion should be sparingly exercised when considering whether or not to allow expenses not specifically allowed by statute and precedent." *Smothers v. Renander,* 2 Haw. App. 400, 409, 633 P.2d 556, 564 (1981) (citing *Harkins v. Ikeda,* 57 Haw. 378, 557 P.2d 788 (1976)).

### A.

Deposition costs are taxable when deemed reasonable, i.e., when the depositions were "necessarily obtained for use in the case." *Geldert v. State,* 3 Haw. App. 259, 269, 649 P.2d 1165, 1172 (1982) (citation omitted). Determining whether a deposition is necessarily obtained for use in the case depends upon a factual evaluation of the case by the trial court in terms of the case's progress in court. *Id.*

There is no doubt that defendants were the prevailing parties at the trial below. Judgments were entered in favor of defendants and against Robert and Martha. *See Abreu v. Raymond,* 56 Haw. 613, 546 P.2d 1013 (1976) (per curiam). However, the record does not reveal whether the trial court applied the test of reasonableness in determining which deposition costs should be allowed or disallowed. Based on the record before us, we cannot say that the trial court had made a sufficient factual evaluation whether the aforementioned depositions were necessarily obtained for use in the case. We, therefore, vacate the order awarding costs to defendants, and remand for further proceedings consistent herewith.

### B.

Generally, witness fees incurred during civil trials are taxable

under HRS § 607-12.[9] However, expert witness fees are not taxable as costs, absent a statute specifically allowing such an expense. *See Lucas v. Liggett & Myers Tobacco Co.*, 51 Haw. 346, 461 P.2d 140 (1969) (per curiam). Defendants assert that HRCP Rule 26(b) (4) (C)[10] provides the authority for allowing taxation of costs for expert witness fees, albeit for purposes of discovery. A fair reading of Rule 26 does not lead us to the conclusion offered by defendants. Rather, as a noted commentator states, Rule 26(b) (4) "governs the discovery of facts known and opinions held by experts and ac-

---

[9] § 607-12 Witnesses' fees, mileage; taxation. The fees of witnesses shall be as follows: Every witness attending and testifying, or subpoenaed and attending, upon the trial of any civil cause, in any court, shall be paid the sum of $4 for each day's attendance in court, and traveling expenses at the rate of 20 cents a mile each way. Every such witness, coming to attend upon court from any island other than that upon which the court is holding session, shall be entitled to $6 for each day's attendance in addition to the actual round trip cost of plane or ship travel and 20 cents for each mile actually and necessarily traveled on the ground each way.

The fees of witnesses may be taxed in the bill of costs as provided by section 607-9.

[10] HRCP Rule 26(b) (4) states:

(4) Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b) (1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A) (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b) (4) (C) of this rule, concerning fees and expenses as the court may deem appropriate.

(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(C) Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b) (4) (A) (ii) and (b) (4) (B) of this rule; and (ii) with respect to discovery obtained under subdivision (b) (4) (A) (ii) of this rule the court may require, and with respect to discovery obtained under subdivision (b) (4) (B) of this rule the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

quired or developed in anticipation of litigation or for trial." 8 Wright & Miller, *Federal Practice and Procedure,* Civil § 2029, p. 240 (1970). *See Wakabayashi v. Hertz Corp.,* 66 Haw. 265, 274, 660 P.2d 1309, 1315 (1983). Further, subsection (b) (4) (C) merely requires the party seeking discovery from the other party's expert witness to share the cost of the expert witness fee, under appropriate circumstances in a particular case. 8 Wright & Miller, *supra,* § 2034 at 259. There is nothing in Rule 26 even suggesting that expert witness fees are or should be taxable as costs.[11]

Defendants contend they could not have presented an adequate defense without obtaining the opinions held by Mists' experts and medical providers. Assuming, *arguendo,* obtainment of said opinions was necessary for defendants' trial preparation it does not necessarily follow that the expense incurred by defendants should be taxed as cost against the Mists. What defendants seek is reimbursement for their portion of expert witness fees paid to Mists' experts and medical providers. To allow these expenses as taxable costs would indeed be unreasonable and contrary to the plain meaning of Rule 26(b) (4) (C).

One set of witness fees taxable as costs is presently provided for by HRS § 607-12. In the context of this case, we deem this to be sufficient. Thus, the expert witness fees of $2,855.75 is to be deleted from the trial court's order filed and dated April 2, 1986.

### IV.

We affirm the judgment denying Martha's claim for loss of consortium. We vacate the April 2, 1986 order regarding defendants' bill of costs and remand for further proceedings not inconsistent with this opinion.

*Gerald C. Sterns* (*Virgil James Wilson III* with him on the briefs; *Sterns and Ingram*) for plaintiffs-appellants.

*Kenneth S. Robbins* for defendants-appellees.

---

[11] In *Lucas v. Liggett & Myers Tobacco Co.,* the court noted that it "has the power to revise the rules so that expert witness fees could be recovered." 51 Haw. at 348, 461 P.2d at 142. Obviously, the court did not do so through Rule 26.