**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000477**
**24-FEB-2023**
**07:57 AM**
**Dkt. 89 MO**

NO. CAAP-17-0000477

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF THE PETITION OF ARDEN DELOS SANTOS,
AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ADS, Appellant-
Petitioner-Appellant,
v.
GORDON I. ITO, INSURANCE COMMISSIONER, DEPARTMENT
OF COMMERCE AND CONSUMER AFFAIRS, STATE OF HAWAIʻI,
Appellee-Appellee,
and
EVERCARE, Appellee-Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-2542-10)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Nakasone and McCullen, JJ.)

Petitioner-Appellant Arden Delos Santos, as Personal
Representative of the Estate of ADS (**Delos Santos**),[1] appeals from
the May 4, 2017 Order Dismissing Appeal and Affirming
Commissioner's Order Awarding Attorneys' Fees and Costs (**Order
Affirming Fees**) and the June 6, 2017 Final Judgment (**Judgment**)
filed by the Circuit Court of the First Circuit
(**Circuit Court**),[2] following remand from this court's prior
decision in Harrison v. Ito, Nos. CAAP-12-0000645,

---

[1] Delos Santos is the father of ADS (**Daughter**). On March 6, 2017, following Daughter's death in October 2016, Delos Santos was substituted as personal representative.

[2] The Honorable Rhonda A. Nishimura presided.

CAAP-12-0000646, CAAP-12-0000647, 2015 WL 4067205 (App. June 30, 2015) (mem.), aff'd, Nos. SCWC-12-0000645, SCWC-12-0000646, SCWC-12-0000647, 2016 WL 5239646 (Haw. Sept. 22, 2016) (SDO).[3]

The underlying case involves Delos Santos's appeals through the external review procedure under Hawaii Revised Statutes (**HRS**) Chapter 432E,[4] of two successive attempts by Respondent-Appellee UnitedHealthcare Insurance Company dba Evercare (**Evercare**)[5] to reduce the amount of covered skilled nursing services for Daughter, a six-year-old Kauaʻi resident suffering from severe brain damage and a seizure disorder, who was an enrollee in Evercare's managed care plan. Delos Santos ultimately prevailed following both external reviews. The external review statute, HRS § 432E-6, contains an attorney's fees and costs provision allowing the insurance commissioner discretion to award fees and costs "in connection with the external review under this statute." HRS § 432E-6(e).[6] The

---

[3] The previous appeal in this case, Delos Santos v. Ito, CAAP-12-0000646, was one of three cases in the consolidated appeal of Harrison v. Ito. In Harrison, we vacated the Circuit Court's dismissal of Delos Santos's request for judicial review of the commissioner's award of attorney's fees for lack of jurisdiction, and remanded for a decision on the merits. 2015 WL 4067205, at *4-7.

[4] HRS Chapter 432E, entitled the "Patients' Bill of Rights and Responsibilities Act," sets forth statutory requirements for managed care plans, and includes an external review procedure by which the enrollee may pursue a complaint against the managed care plan, in HRS § 432E-6, discussed infra. "'External review' means an administrative review requested by an enrollee under 432E-6 of a managed care plan's final internal determination of an enrollee's complaint." HRS § 432E-1 (2005).

The external review statute, HRS § 432E-6, was repealed by the 2011 Legislature, to comply with the federal Patient Protection and Affordable Care Act of 2010. See Haw. Med. Serv. Ass'n v. Adams, No. CAAP-10-0000011, 2013 WL 4606314, at *1 n.2 (App. Aug. 29, 2013) (SDO); 2011 Haw. Sess. Laws Act 230, § 10 at 746. The current external review law is contained in HRS Chapter 432E, Part IV, entitled "External Determinations." See HRS §§ 432E-31 to 432E-44.

[5] Evercare administers the Quest Expanded Access Medicaid plan that provides medically necessary covered services for aged, blind, or disabled enrollees. Evercare now operates as UnitedHealthcare Insurance Company, Inc.

[6] The external review statute's attorney's fees and costs provision, HRS § 432E-6(e) (2005) (repealed 2011), provides:

> (e) An enrollee may be allowed, at the commissioner's

(continued...)

attorney's fees at issue here were incurred during a month-long period after the first external review was completed but before the second external review was commenced.  Respondent-Appellee Insurance Commissioner Gordon I. Ito, Department of Commerce and Consumer Affairs, State of Hawai'i (**Commissioner**) awarded Delos Santos $30,839.76 in attorneys' fees and costs, rather than the full $43,067.35 amount that Delos Santos requested, which the Circuit Court affirmed.

In this secondary appeal, Delos Santos contends the Circuit Court erroneously affirmed: (1) the Commissioner's reduction of $3,703.30 in the amount of attorney's fees incurred during the period after the first external review was completed but before the second external review commenced, as not incurred "in connection" with the external review; and (2) the Commissioner's denial of $8,340.00 of expert witness fees as costs, because HRS § 432E-6(e) did not expressly provide for an award of expert witness fees.[7]

We hold that the Circuit Court was wrong in affirming the Commissioner's ruling that the attorney's fees during the period between the first external review and the second external review were precluded, because the fees were incurred "in connection with the external review" under HRS § 432E-6(e).  We also hold that under the circumstances of this case and the

_____

[6](...continued)
discretion, <u>an award of a reasonable sum for attorney's fees and reasonable costs incurred in connection with the external review under this section</u>, unless the commissioner in an administrative proceeding determines that the appeal was unreasonable, fraudulent, excessive, or frivolous.

(Emphasis added).

The current external review law does not contain a provision for attorney's fees and costs.  Rather, it provides that the carrier against which an external review is filed shall pay the costs of the independent review organization conducting the external review.  <u>See</u> HRS § 432E-42 (2011).

[7]     We have reordered and restated Delos Santos's contentions for clarity.  Delos Santos's contentions regarding the standards of review that the Circuit Court should have applied to the attorney's fees and expert witness fees issues are discussed <u>infra</u>.

3

principles of statutory construction that apply to HRS Chapter 432E, expert witness fees are not categorically excluded as recoverable "costs" under HRS § 432E-6(e).  We thus vacate and remand.

### I.    BACKGROUND

This case involved a first notice of proposed reduction in covered services, followed by an internal review (**First Internal Review**),[8] then an external review (**First External Review**); then there was a second notice of proposed reduction in covered services, followed by an internal review (**Second Internal Review**), and external review (**Second External Review**).

**First External Review concluded May 25, 2010**[9]

On December 28, 2009, Evercare sent the first notice informing Delos Santos that it planned to reduce the amount of covered skilled nursing services for Daughter from 75 to 60 hours per week (**first notice**).  Delos Santos appealed the reduction to Evercare, which conducted the First Internal Review, and upheld the decision in a final internal determination.  On February 24, 2010, Delos Santos requested the First External Review of Evercare's final internal determination.

On May 7, 2010, Daughter was hospitalized at Kapiʻolani Medical Center for Women and Children on Oʻahu (**Kapiʻolani**).

On May 11, 2010, the external review panel conducted the First External Review hearing.

On May 14, 2010, Daughter was discharged from Kapiʻolani and flew back to Kauaʻi.  She had a follow-up visit with her primary care physician (**PCP**) on May 18, 2010,

---

[8]    "Internal review" is defined as "the review under section 432E-5 of an enrollee's complaint by a managed care plan."  HRS § 432E-1 (2005).  The internal review statute, HRS § 432E-5, requires the issuance of a "final internal determination" by the managed care plan in 60 days.  HRS § 432E-5(d).

[9]    This appeal is from the May 4, 2017 Order Affirming Fees that pertained to the Second External Review.  The record on appeal does not contain the record pertaining to the First External Review.  The background facts set forth here regarding the First Internal Review, First External Review, and order disposing of the First External Review, are contained in the January 31, 2011 order disposing of the Second External Review.

accompanied by her service coordinator, who planned an immediate reassessment of Daughter's need for services. Daughter's mother requested that the reassessment be postponed until the next day. The following day, Delos Santos canceled the appointment for the reassessment until such time as his counsel (**Delos Santos's counsel**) could participate.

On May 21, 2010, the service coordinator met with the family and Daughter's nurse to conduct the reassessment and complete a Home Skilled Nursing Scoring Tool (**Scoring Tool**).[10] The May 21, 2010 Scoring Tool reflected that the family caregivers were providing 465 minutes or 7.75 hours per day of nursing services.

On May 25, 2010, the Commissioner issued Findings of Fact (**FOF**), Conclusions of Law (**COL**) and Order (**May 25, 2010 First External Review Order**)[11] reversing the first final internal determination, concluding that Evercare's "reduction of the skilled nursing hours based on its determination that [Daughter]'s family was capable of safely performing the skilled services, in reliance on past history and [Daughter]'s medical record, was not reasonable." The First External Review Order noted that "no one had observed the care being provided by [Daughter]'s family to determine what quality of care they were providing or whether they were performing mistakes in technique which could cause problems."

On May 25, 2010, the same day as the First External Review Order, Daughter's PCP requested skilled nursing services twenty-four hours a day, seven days a week (**24/7**), or 168 hours per week.

---

[10] A service coordinator assigned by Evercare to each enrollee completes a Scoring Tool that captures, in a twenty-four-hour period, the number of hours spent providing skilled nursing services to an enrollee. Applying Medicaid and Medicare guidelines, Evercare's Medical Director determines how much of the time captured in the Scoring Tool qualifies for coverage.

[11] The May 25, 2010 First External Review Order is not a part of this record. See note 9 supra.

On May 28, 2010, Evercare received the PCP's May 25, 2010 request for an expedited decision; Evercare on that date approved two weeks of 24/7 skilled nursing coverage because it had not yet been able to complete a skills check on Daughter's parents.

Based on the May 25, 2010 First External Review Order, which found that the reduction in the amount of covered skilled nursing services was not reasonable, Evercare did not implement the reduction of Daughter's covered skilled nursing services to sixty hours per week. To address the Commissioner's concern in the May 25, 2010 First External Review Order that no one had observed the family performing services, Evercare arranged for Lynell Rogers, RN (**Nurse Rogers**), to perform a skills assessment (**Skills Check**) on June 14, 2010, of Daughter's parents administering care in the home to ensure safety and effectiveness.

**Attorney's fees incurred June 13 to July 13, 2010**

The attorney's fees at issue in this appeal were incurred during a month-long period from June 13, 2010 to July 13, 2010. On June 13, 2010, the day before the June 14, 2010 Skills Check, Delos Santos's counsel spent 1.42 hours researching parent skills assessment standards and services. On June 14, 2010, the day of the Skills Check, Delos Santos's counsel spent 4.67 hours consulting with Daughter's parents, flying to Kauaʻi, and attending the Skills Check. Delos Santos's counsel had the Skills Check videotaped.

During the Skills Check on June 14, 2010, Nurse Rogers coached Daughter's parents on certain procedures and skills. Nurse Rogers determined that Daughter's mother could competently perform nursing services and that Delos Santos was willing to and did learn some of those services.

Based on Nurse Rogers' Skills Check report and the May 21, 2010 Scoring Tool, Evercare determined that Daughter's family demonstrated the ability to provide services that Daughter

6

required, and started to develop a transition plan for Daughter's care to reduce the amount of covered skilled nursing services.

On June 22 and 23, 2010, Evercare's medical director discussed with Daughter's PCP the proposed transition plan from 24/7 (168 hours) skilled nursing care to 96 hours per week. The PCP reiterated the PCP's recommendation for 24/7 care.

On June 26, 2010, Delos Santos's counsel spent .67 hours reviewing Nurse Rogers' Skills Check report and discussing it with Daughter's parents. On June 30, 2010, Delos Santos's counsel spent 1.87 hours searching for experts on the standard of care for home-based skilled nursing to review the videotaped Skills Check. Delos Santos's counsel hired two experts, Aaron Tabacco, RN, BSN (**Nurse Tabacco**), a published expert on the assessment of family capacities to support home nursing care, and Leslie Elder, RN (**Nurse Elder**), who administered the Seattle Children's Hospital program that trains parents for delegated skilled nursing services.

On July 7, 2010, Evercare's service coordinator presented a transition plan to the family to reduce the amount of covered skilled nursing services for Daughter, from 24/7 to a schedule that would place some responsibility on her parents to provide care consistent with Medicaid coverage guidelines. While the family considered the transition plan, Evercare approved the continuation of 24/7 skilled nursing services for Daughter, to August 1, 2010.

On July 7-9, 2010 and July 13, 2010, Delos Santos's counsel spent 4.14 hours working with the hired experts, conferring with the family, and drafting an appeal letter to Evercare.[12]

---

[12] Delos Santos's counsel's billing entries for this July time frame reflect 2.38 hours on July 7; .37 hours on July 8; .47 hours on July 9; .62 hours on July 9; and .3 hours on July 13, 2010.

> **Second Internal and External Review, July 23,**
> **2010 to January 31, 2011**

On July 16, 2010, Evercare sent a second notice to inform Delos Santos that it would reduce the amount of covered skilled nursing services for Daughter from 168 (24/7) hours to 96 hours per week by the end of a transition period beginning August 1, 2010 (**Second Notice**).

On July 23, 2010, Delos Santos appealed this decision to Evercare for internal review.

On August 20, 2010, Evercare issued a final internal determination and upheld the reduction in covered skilled nursing services to 96 hours per week.

On September 10, 2010, Delos Santos requested a Second External Review of the second final internal determination.

At the January 7, 2011 Second External Review hearing, Delos Santos introduced the expert testimony of Nurse Tabacco and Nurse Elder and established, *inter alia*, the existence of a widely accepted standard of care and that the June 14, 2010 Skills Check by Nurse Rogers fell short of that standard.[13]

On January 31, 2011, the Commissioner issued the External Review Panel's Findings of Fact, Conclusions of Law, Discussion and Order affirming the Panel's decision (**January 31, 2011 Second External Review Order or Second External Review Order**), upholding Evercare's second final internal determination in a 2-1 split decision.[14]

---

[13]    The Commissioner noted that Delos Santos established, via expert testimony, that Nurse Rogers' assessment of Daughter's parents was "not a perfect, textbook assessment."

[14]    The External Review Panel consisted of three members, and one member dissented from the disposition. At the end of its FOFs and COLs, the Panel provided the following "reflection . . . purely for informational purposes" in the Second External Review Order:

> [Evercare] maintains that in the case of each of the medical issues that [Daughter] faces, skilled nursing care is not required. That might be true if one takes each issue as a stand alone issue. But when one is dealing with a patient with this many medical issues and the care required is difficult and continuous, a reasonable person might come to

(continued...)

### 2011 Circuit Court appeal, fees and costs motion

On March 7, 2011, Delos Santos appealed the January 31, 2011 Second External Review Order to the Circuit Court.

On May 4, 2011, Delos Santos filed a Motion for An Award of Attorneys' Fees and Costs Pursuant to HRS § 432E-6(e) (**Motion for Fees and Costs**) with the Commissioner, seeking attorney's fees from June 13, 2010 to January 7, 2011, which was the date of the Second External Review hearing. Delos Santos attached Delos Santos's counsel's invoice that included (1) billing entries from June 13, 2010 to July 13, 2010, and (2) expert witness invoices for Nurse Elder and Nurse Tabacco.

Evercare opposed the Motion for Fees and Costs, arguing that: (1) the $3,703.30 attorney's fees billed between June 13 and July 13, 2010, was for work Delos Santos's counsel did prior to the issuance of a final internal determination, and thus, those fees were not "incurred in connection with the external review"; and (2) the $8,340.00 expert witness fees for Nurse Tabacco and Nurse Elder were "not recoverable as a cost item under Hawaiʻi law."

While the Motion for Fees and Costs was pending, on September 15, 2011, the Circuit Court reversed the January 31, 2011 Second External Review Order (**Order Reversing Second External Review Order**), concluding that the June 14, 2010 Skills

---

[14](...continued)
the conclusion that the overall situation really calls for skilled nursing care, particularly when the treating physician has asked for that and given the testimony of Aaron Tabacco and Leslie Elder. Although [Evercare] may be concerned about costs, this may just be one of those cases where the thing to do is to pay those costs. Cost-efficiency is an important goal, but in some cases it should not be the highest priority. In addition, although putting [Daughter] in an institution might provide reasonable technical health care, it might have a serious adverse effect on her psychological development given her young age. Therefore, this is not a situation of all things being otherwise equal besides costs.

(Emphasis added). Notably, the underscored language above was referenced and quoted verbatim in the subsequent Circuit Court review, as set forth infra in footnote 15.

Check failed to meet the standard of care, and that Evercare did not act reasonably based on the PCP's recommendation and the testimony of Delos Santos's experts.[15]   The case was remanded to the Commissioner.

A week following the Circuit Court's Order Reversing Second External Review Order, the Commissioner issued the September 22, 2011 Order Awarding Attorneys' Fees and Costs (**Order Awarding Fees**) that is the subject of this appeal.  The Commissioner concluded that:  although Evercare prevailed, it was a split decision by the Second External Review Panel, suggesting that this case was not unreasonable, fraudulent, excessive, or frivolous under HRS § 432E-6(e); the phrase "in connection with the external review" was "broad enough" to encompass fees incurred in the Circuit Court appeal;[16] and Delos Santos's counsel should be awarded reasonable attorney's fees and costs.

---

[15]     The Circuit Court specifically held that:

> The conclusion that [Daughter]'s family was capable of safely and effectively performing the skilled nursing services was not supported by reliable, probative and substantial evidence because [Daughter]'s expert witnesses testified that the reassessment of the family's skills conducted in [Daughter]'s home on June 14, 2010, on which the conclusion relied, failed to meet the standard of care in several material respects.  The Court finds it further significant that the [Second External Review] Panel commented in its "Discussion":  "[B]ut when one is dealing with a patient with this many medical issues and the care required is difficult and continuous, a reasonable person might come to the conclusion that the overall situation really calls for skilled nursing care, particularly when the treating physician has asked for that and given the testimony of Aaron Tabacco and Leslie Elder."

(Bracketed references and emphases added) (quotation marks and brackets in original).

[16]     The Commissioner rejected Evercare's argument that the plain language of HRS § 432E-6 did not authorize the Commissioner to award attorney's fees for a circuit court appeal of an external review decision because the language "'external review under this section' is clearly limited to the administrative proceeding" described in HRS § 432E-6(e).  The Commissioner awarded the $11,264.10 attorney's fees and costs for the appeal, stating: "although [Evercare] has objected to the idea that fees incurred on an appeal to the judicial system are not payable, we believe that the words 'in connection with the external review' are broad enough to encompass that situation."

However, the Commissioner reduced the attorney's fees and denied the expert costs that Delos Santos requested, explaining that:

> First, we agree with [Evercare] that [Daughter]'s counsel <u>cannot bill</u> for fees and costs incurred before [Evercare]'s final internal determination was issued <u>because these are not incurred "in connection with the external review</u>."  The amount disallowed for this purpose is $3,703.30.
>
> Second, [Evercare] has objected to the compensation of the expert witness fees of Aaron Tabacco and Leslie Elder on the basis that <u>the fee shifting statute [(HRS § 432E-6(e)] does not expressly contemplate payment for expert witness fees</u>.  We believe that [Evercare] is correct that if the Legislature had intended to compensate for expert witness fees, they could have stated so explicitly in the statute.  The amount disallowed for this purpose is $8,340.

(Emphases added).

### 2015 ICA appeal, 2017 remand to Circuit Court

On October 24, 2011, Delos Santos appealed the Order Awarding Fees to the Circuit Court, which dismissed the appeal for lack of jurisdiction on May 24, 2012.  On appeal, we vacated the dismissal and remanded for a decision on the merits in 2015, which the supreme court affirmed in 2016.  <u>See</u> <u>Harrison</u>, 2015 WL 4067205, at *7; <u>Harrison</u>, 2016 WL 5239646, at *1.

On remand in 2017, the Circuit Court heard argument and issued the May 4, 2017 Order Affirming Fees, which affirmed the Commissioner's Order Awarding Fees and dismissed the appeal.[17]  This secondary appeal followed.

---

[17]   The Order Affirming Fees stated in pertinent part:

Under Hawaiʻi Revised Statutes ("HRS") § 432E-6(e), repealed effective January 1, 2012, an enrollee could be allowed, at the Commissioner's discretion, an award of a reasonable sum for attorneys' fees and reasonable costs incurred in connection with the external review under section 432E-6. In the Attorney Fee Order, the Commissioner parsed out three discrete categories in disallowing certain attorneys' fees and costs. The Court finds and concludes that the Commissioner's decision in that regard was within his discretion as to what is a reasonable sum for attorneys' fees and what reasonable costs were incurred.

## II.    STANDARDS OF REVIEW

### A.    Secondary Appeal

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision.

HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

(g)    Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

  (1)    In violation of constitutional or statutory provisions; or

  (2)    In excess of the statutory authority or jurisdiction of the agency; or

  (3)    Made upon unlawful procedure; or

  (4)    Affected by other error of law; or

  (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

  (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Hanneman, 106 Hawaiʻi 359, 363, 105 P.3d 236, 240 (2005) (brackets omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004)).

### B.    Conclusions of Law

"Pursuant to HRS § 91-14(g), an agency's conclusions of law are reviewed de novo."  Id. (citation omitted).  "A circuit court's conclusions of law are subject to *de novo* review."

Paul's Elec. Serv., 104 Hawaiʻi at 420, 91 P.3d at 502 (citation omitted).

### C.    Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." Stout v. Bd. of Trs. of the Emps.' Ret. Sys., 140 Hawaiʻi 177, 185, 398 P.3d 766, 774 (2017) (citing Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawaiʻi 184, 193, 159 P.3d 143, 152 (2007)).

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

Id. (quoting Citizens, 114 Hawaiʻi at 193-94, 159 P.3d at 152-53).

### D.    Judicial Deference to Agency Interpretation

Generally, we apply the rule of judicial deference to an agency's expertise and the agency's "interpretation of its own governing statute[.]" Gillan v. Gov't Emps. Ins. Co., 119 Hawaiʻi 109, 114, 194 P.3d 1071, 1076 (2008) (internal quotation marks and citation omitted). "The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose." Stout, 140 Hawaiʻi at 185, 398 P.3d at 774 (quoting Coon v. City & Cnty. of Honolulu, 98 Hawaiʻi 233, 245, 47 P.3d 348, 360 (2002)).

13

### III.    DISCUSSION

**A.    Under the circumstances of this case, the abuse of discretion standard of review does not apply.**

In its Order Affirming Fees, the Circuit Court applied an abuse of discretion standard of review to the Commissioner's Order Awarding Fees.  The Circuit Court reasoned that because HRS § 432E-6(e) allowed an award of reasonable attorney's fees and costs at the Commissioner's discretion, the Commissioner's decision to "parse[] out three[18] discrete categories in disallowing certain attorneys' fees and costs" was "within his discretion as to what is a reasonable sum" for the attorney's fees and costs incurred.  (Footnote added).

Delos Santos contends that the Circuit Court erred in failing to apply HRS § 91-14(g)(5) correctly when it concluded that the Commissioner's denial of $3,703.30 in attorney's fees was within the Commissioner's discretion in light of HRS Chapter 432E and the intent of the Legislature.  Delos Santos claims that the denial of the attorney's fees for the June 13, 2010 to July 13, 2010 time frame was a mixed question of fact and law, for which the clearly erroneous standard of review applies rather than the abuse of discretion standard.  Delos Santos also contends that the Circuit Court "failed to apply" HRS § 91-14(g)(4) correctly on a question of law when it concluded that the Commissioner's denial of $8,340 in costs for expert witness fees was a permissible exercise of discretion, rather than applying *de novo* review.  We agree with Delos Santos to the extent that the Circuit Court was reviewing questions of law as to whether the Commissioner could award the attorney's fees and expert fees in question, and thus, should have applied the *de novo* standard of review.

---

[18]    The third disallowed category had to do with $184.29 in fees and costs related to the Circuit Court appeal.  This disallowed item is not at issue in this appeal.

14

HRS § 432E-6(e) provides that an enrollee like Delos Santos "may be allowed, <u>at the Commissioner's discretion</u>," an award of reasonable attorney's fees and costs "incurred in connection with the external review[.]"  (Emphasis added).  The statute grants the Commissioner discretion to determine whether to award attorney's fees and costs "unless the Commissioner . . . determines the appeal was unreasonable, fraudulent, excessive, or frivolous," and the discretion to determine what is a reasonable sum for the fees and costs awarded.  <u>Id.</u>

Here, the Commissioner's specific denials of the attorney's fees and expert costs at issue did not involve the discretionary areas identified in the statute, i.e. whether to award fees and costs or not, or what sum would be reasonable.  Rather, the Commissioner interpreted the statutory language, "in connection with the external review under this statute," to determine whether attorney's fees incurred during a particular time frame were within the scope of the statute.  With respect to expert witness fees, the Commissioner also interpreted the statute to determine whether specific costs such as expert witness fees were permissible under the statute.  Because these are conclusions of law interpreting and applying HRS § 432E-6(e), we apply a *de novo,* right/wrong standard of review.  <u>See</u> <u>Stout</u>, 140 Hawaiʻi at 185, 398 P.3d at 774; <u>United Pub. Workers</u>, 106 Hawaiʻi at 363, 105 P.3d at 240.

**B.    Under the circumstances of this case, where the two successive external reviews were repeated attempts to reduce the amount of coverage for the same services, the attorney's fees incurred between the two external reviews were "in connection with the external review[.]"**

Delos Santos contends that the Circuit Court erred in affirming the Commissioner's reduction of attorney's fees where both the Circuit Court and the Commissioner did not apply the "facts in this particular case to the term 'in connection with the external review' in light of the whole of [sic] Chapter 432E, H.R.S. and the intent of the Legislature."  Delos Santos argues

that Evercare "attempted to address the concerns raised" in the First External Review Order to "justify a reduction in the same services on the same grounds by engaging an expert nurse in anticipation of a second external review."  Delos Santos asserts that the Commissioner should have liberally construed the term "in connection with the external review" under HRS § 432E-6(e) to award the fees in question in light of the facts connecting the First External Review to the Second External Review.

Relying on County of Hawaiʻi v. C & J Coupe Family Ltd. P'ship, 120 Hawaiʻi 400, 408, 208 P.3d 713, 721 (2009), Evercare claims that the date of the Second Final Internal Determination is the "relevant starting point for the external review process" when determining what attorney's fees and costs were incurred "in connection with" the Second External Review.  Evercare argues that the supreme court in C & J Coupe interpreted a comparable statutory provision, HRS § 101-27 (awarding prevailing defendant in an eminent domain proceeding reasonable fees and costs "in connection therewith"), as "properly exclud[ing] all fees and costs incurred prior to the filing of the notice of appeal."  Id. The supreme court read HRS § 101-27 and HRAP Rule 39 (pertaining to fees and costs on appeal), *in pari materia* to specifically conclude that because "the procedures for requesting attorneys' fees and costs on appeal are outlined in HRAP Rule 39," that "HRAP Rule 39 should govern."  Id. at 406, 208 P.3d at 719.  For the reasons we explain infra, C & J Coupe is inapposite because it dealt with which of two attorney's fees and costs provisions covered fees and costs on appeal.  The issue here is whether the pertinent fees and costs statute covers the period between two external reviews that concerned the same issue — — Evercare's successive attempts to reduce the amount of coverage for the same services.

16

>1.     **The plain language of "in connection with the external review" encompasses the attorney's fees at issue.**

In construing a statute, the starting point is the language of a statute itself.  <u>Stout</u>, 140 Hawaiʻi at 185, 398 P.3d at 774.  "To effectuate a statute's plain language, its words 'must be taken in their ordinary and familiar signification, and regard is to be had to their general and popular use.'"  <u>Wells Fargo Bank, N.A. v. Omiya</u>, 142 Hawaiʻi 439, 449, 420 P.3d 370, 380 (2018) (internal quotation marks omitted) (quoting <u>State v. Guyton</u>, 135 Hawaiʻi 372, 378, 351 P.3d 1138, 1144 (2015)).  If the terms are not statutorily defined, then an appellate court "'may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined.'"  <u>Id.</u> at 449-50, 420 P.3d at 380-81 (quoting <u>Guyton</u>, 135 Hawaiʻi at 378, 351 P.3d at 1144).

HRS § 432E-6(e) provides for attorney's fees and costs "incurred in connection with the external review under this section[.]"  The issue here is whether the attorney's fees incurred after the First External Review concluded and before the Second External Review procedure began were incurred "in connection with the external review[.]"  HRS § 432E-6(e) and the remainder of HRS Chapter 432E do not explain what "in connection with" means under the statute.  HRS § 432E-6(e) does not use temporal, or time-specific language such as "***during*** the external review," but uses broader language, "in connection with[.]"  Merriam-Webster defines "in connection with" as "in relation to (something)."  *In connection with*, <u>Merriam-Webster</u>, https://www.merriam-webster.com/dictionary/in%20connection%20with (last visited Dec. 2, 2022).  Thus, the phrase "in connection with" -- means the attorney's fees incurred "in relation to" the external review, without any temporal or time-specific language like the word "during."  *In connection with*, <u>supra</u>; <u>see</u> <u>Omiya</u>, 142 Hawaiʻi at 449-50, 420 P.3d at 380-81.

Here, there is a clear common connection between the attorney's fees at issue and the two external reviews, which all concerned the same issue -- Evercare's successive attempts to reduce the amount of covered skilled nursing services for Daughter.  The First External Review Order denied the first attempted reduction as "not reasonable," citing the Commissioner's concern that Evercare reduced services without having observed Daughter's parents first performing the skilled nursing services.  In the two weeks following the May 25, 2010 First External Review Order, Evercare began to address the concern in the First External Review Order by arranging for Nurse Rogers to administer the Evercare Skills Check to Daughter's parents scheduled for June 14, 2010.  From June 13 to July 13, 2010, Delos Santos's counsel responded to the June 14, 2010 Skills Check by researching experts on Skills Check procedure and attending the Skills Check, followed by reviewing and discussing Nurse Rogers' Skills Check report with Daughter's family, retaining and consulting opposition Skills Check experts, and appealing Evercare's July 7, 2010 notification to again attempt to reduce the amount of covered skilled nursing services for Daughter.  The Second External Review turned on the June 14, 2010 Skills Check, the competing expert opinions about the adequacy of the Skills Check, and whether Evercare acted reasonably in its second attempt to reduce the amount of covered services.  While Delos Santos lost at the Second External Review hearing in a split 2-1 decision, the Circuit Court's Order Reversing Second External Review Order reversed in favor of Delos Santos based on the testimony of Delos Santos's Skills Check experts.  Thus, the record reflects that the First External Review, the Second External Review, and Delos Santos's counsel's work in the interim period between the two external reviews, were all connected to the same common issue of Evercare's successive attempts to reduce the amount of covered skilled nursing services.  Under these circumstances, we conclude that the attorney's fees at issue were

18

incurred "in relation to" and in connection with both external reviews.  See HRS § 432E-6(e); *In connection with*, supra.  As we explain infra, this plain language construction is consistent with the liberal approach afforded to remedial statutes like HRS § 432E-6(e).

> **2.    Because HRS § 432E-6(e) is a remedial statute, the "in connection with" language must be liberally construed.**

Delos Santos argues that HRS § 432E-6 is a remedial statute, enacted "to provide patients of managed care systems a fair opportunity to be heard on denials of coverage in a relatively expeditious expert forum . . . ."  Citing Flores v. United Air Lines, Inc., 70 Haw. 1, 757 P.2d 641 (1988),[19] Delos Santos urges that the Commissioner "was required to construe HRS §432E-6(e) liberally to accomplish the purposes for which it was enacted."

Evercare responds that "to the extent the phrase 'in connection with' is ambiguous, the Commissioner's interpretation must be given deference."  However, the rule of deference does not apply if we determine that the Commissioner's interpretation of the statute contravenes the legislative purpose.  See Stout, 140 Hawaiʻi at 185, 398 P.3d at 774.  Evercare also claims that HRS § 432E-6(e) is a fee-shifting statute "in derogation of the common law" American Rule that parties must bear their own attorney's fees and costs, and thus, the statute "must be strictly construed."

"Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries."  Kalima v. State, 111 Hawaiʻi 84, 100, 137 P.3d 990, 1006 (2006) (quoting Flores, 70 Haw. at 12 n.8, 757 P.2d at 647 n.8).  A remedial

_____

[19]    In Flores, the supreme court found HRS § 378-32(2), dealing with discriminatory employment practices, was "remedial" in nature because it granted a person whose employment was terminated due to a work injury, first preference for reemployment by the employer if there was a job the employee could perform.  70 Haw. at 12 n.8, 757 P.2d at 647 n.8.

statute "is to be construed liberally in order to accomplish the purpose for which it was enacted." Flores, 70 Haw. at 12, 757 P.2d at 647 (quoting Roe v. Doe, 59 Haw. 259, 265, 581 P.2d 310, 315 (1978)).  "[R]emedial statutes should be liberally construed to suppress the perceived evil and advance the remedies provided by such statutes." Castro v. Melchor, 142 Hawai'i 1, 14, 414 P.3d 53, 66 (2018) (quoting Kalima, 111 Hawai'i at 100, 137 P.3d at 1006).  In Amantiad v. Odum, the Supreme Court of Hawai'i explained that workers' compensation statutes are "remedial" in nature, as they have "beneficent purpose" and "'liberal construction in favor of the employee'" was necessary to fulfill the humanitarian purposes for which it was enacted. 90 Hawai'i 152, 161, 977 P.2d 160, 169 (1999) (citation omitted). "[I]nterpretations that impede rather than advance the remedies" provided by remedial statutes are disfavored in law.  Kalima, 111 Hawai'i at 100, 137 P.3d at 1006 (quoting Flores, 70 Haw. at 12, 757 P.2d at 647).

The purpose and the history of HRS § 432E-6 indicates that it is a remedial statute.  In 1998, the Legislature enacted HRS Chapter 432E, entitled the "Hawaii Patient Bill of Rights and Responsibilities Act," with the following explanatory purpose:

> Managed care has evolved, and Hawaii has been fortunate not to experience the questionable practices of certain entities engaging in managed care. Nevertheless, legitimate concerns provide the legislature with sufficient reason to protect the citizens of the State from certain practices of managed care.
>
> The purpose of this Act is to create a new chapter to afford patients of managed care systems certain rights and protections.

1998 Haw. Sess. Laws Act 178, § 1 at 662 (emphases added).[20]  The 1998 legislative history indicates that the purpose was "to enact

---

[20]     While the 1998 version of the external review statute did not contain an attorney's fees and costs provision, it did contain the predecessor version of the current external review procedure statute, which was then entitled "Appeals to the Commissioner" rather than using the term "external review."  See 1998 Haw. Sess. Laws Act 178, § 6 at 664.  The appeal to the Commissioner consisted, *inter alia*, of a review of the "final determination by the managed care plan" by a three-member review panel, conducted in accordance with HRS Chapter 91.  See id.

a health care bill of rights" because "patients in managed care need to have their rights protected in order to ensure that they are getting the best treatment possible."  S. Stand. Comm. Rep. No. 2414, in 1998 Senate Journal, at 989-90.  The Legislature pertinently found that:

> (1) Managed care is increasing in prevalence as a means of containing health care costs;
>
> (2) In the process of containing costs, the health and safety of the patient must be protected; and
>
> (3) Patients in managed health care systems are at risk of restricted access to services, misinformation about treatment decisions, and a lack of grievance procedures, quality reviews, and information about their plan.

S. Stand. Comm. Rep. No. 2414, in 1998 Senate Journal, at 990.  The Legislature also stated:

> Your Committees find that managed care patients need help negotiating the complex system of managed health care.  Managed care plans were developed as a means of reducing the costs of medical care.  However, these cost-reducing procedures often result in complications or loss of quality of health care for the consumers.  This measure will provide patient protections, including health care rights and standards, which will help to balance the quality of health care received with the cost-reducing measures implemented by managed care plans.

H. Stand. Comm. Rep. No. 1296-98, in 1998 House Journal, at 1582. In 1999, when the attorney's fees and costs provision was added, the Legislature explained:  "[t]he purpose of this Act is to strengthen the protection of the consumer rights of patients receiving health care under managed care plans . . . ."[21] 1999 Haw. Sess. Laws Act 137, § 1 at 440.

---

[21]    The 1999 amendments to the external review statute, HRS § 432E-6, added the attorney's fees and costs provision in subsection (d), as follows: "(d) An enrollee may be allowed, at the commissioner's discretion, an award of a reasonable sum for attorney's fees and reasonable costs of suit in an action brought against the managed care plan."  1999 Haw. Sess. Laws Act 137, § 6 at 443.  The Legislature explained the amendment as providing that:  "[a]t the commissioner's discretion, the enrollee may recover reasonable attorney's fees and costs[.]"  Conf. Comm. Rep. No. 121, in 1999 Senate Journal, at 896.  The legislative history does not contain any specific explanation for the addition of the attorney's fees and costs provision.

Thus, the Legislature's purpose for enacting the external review statute, HRS § 432E-6, was to assist patients of managed care plans and to afford them rights and protections. The external review procedure in HRS § 432E-6 provided a procedural remedy in the form of a review hearing, and served to strengthen the "consumer rights" of patients, to enforce a patient's rights against unreasonable adverse determinations regarding health care coverage, and to protect the health and safety of the patient while cost-reducing measures were implemented by managed care plans. Id.; see S. Stand Comm. Rep. No. 2414, in 1998 Senate Journal, at 990; H. Stand. Comm. Rep. No. 1296-98, in 1998 House Journal, at 1582. The award of reasonable attorney's fees and costs for an enrollee who mounted a challenge to a managed care plan's decision through an external review, is remedial because it "facilitate[s] . . . the enforcement" of patients' rights through the external review procedure. Kalima, 111 Hawai‘i at 100, 137 P.3d at 1006. The statutory provision allowing an award of reasonable attorney's fees and costs to an enrollee promotes the "'redress of injuries'" for enrollees who incur attorney's fees and costs for an external review. Id. (citation omitted).

Here, in the Order Awarding Fees, the Commissioner rejected Evercare's argument that the plain language of HRS § 432E-6 did not authorize attorney's fees for a circuit court appeal of an external review decision. The Commissioner liberally construed the words "in connection with the external review" as being "broad enough" to encompass fees incurred during the circuit court appeal after the external review was completed. See Adams, 2013 WL 460314 at *2.[22] Such a liberal construction

_____

[22] This rationale and result awarding fees for the circuit court appeal is similar to the Commissioner's conclusion in Adams, 2013 WL 460314, at *2, that "the plain meaning of the words 'in connection with [the external review]' [wa]s broad enough to encompass appeals from an external review." In affirming the Commissioner's conclusion, this court noted that "the statute [(HRS § 434E-6(e)], on its face, gave the Commissioner the authority to award attorney's fees in connection with the external review and the Commissioner

(continued...)

should also have applied to the attorney's fees incurred between the two successive external reviews of Evercare's repeated attempts to reduce the amount of Daughter's covered services. Under the circumstances of this case, construing HRS § 432E-6(e) broadly to allow for the award of attorney's fees at issue advances the remedial purpose of the statute. See id.

For the reasons set forth above, the Circuit Court and the Commissioner erred in their legal conclusion that the "in connection with" language in HRS § 432E-6(e) did not encompass the attorney's fees incurred during the period between the two external reviews. See United Pub. Workers, 106 Hawai'i at 363, 105 P.3d at 240.

> **C.** **Under the circumstances of this case and the principles of statutory construction that apply to HRS Chapter 432E, expert witness fees are not categorically excluded as recoverable "costs" under HRS § 432E-6(e).**

Delos Santos contends that the Commissioner erred in construing HRS § 432E-6(e) to conclude that "if the Legislature had intended to compensate for expert witness fees, they could have stated so explicitly in the statute." Delos Santos raises a number of arguments on how the term "costs" in HRS § 432E-6(e) should be construed, based on statutory language, legislative intent, public policy, and the "Conflict with other laws" (**conflict-of-laws**) provision in HRS § 432E-2.[23] HRS § 432E-6(e) authorizes an award of reasonable "costs," which Delos Santos claims must be construed to include expert witness fees, and that such implied inclusion is consistent with legislative intent.

---

[22](...continued)
had the power to make such an award." Id. at *1. Applying the rule of judicial deference to agency interpretation, we reversed the Circuit Court's rejection of the Commissioner's award of attorney's fees and held that the Commissioner did not palpably err in broadly construing HRS § 432E-6(e) to allow attorney's fees for an appeal from an external review. Id. at *1-3.

[23] HRS § 432E-2 (2009), entitled "Conflict with other laws," provides: "If there is a conflict with any other law, this chapter shall prevail to the extent that this chapter offers greater protection or rights to the enrollee."

Delos Santos also argues that HRS § 432E-6(e) does not explicitly provide for any of the costs that the Commissioner approved (i.e. for filing fees, transcripts, copies), yet the Commissioner improperly denied expert witness costs on this basis.  Delos Santos asserts that, pursuant to Hawaiʻi Administrative Rules (**HAR**) § 16-201-21(d) (1990),[24]  because it was Delos Santos's burden to prove by a preponderance of the evidence that Evercare acted unreasonably in reducing services which were "medically necessary,"[25] the Legislature cannot have intended for "managed care organizations to offer unchallenged expert opinions in the external review."  Delos Santos explains that Daughter "would

---

[24]    Delos Santos incorrectly identifies the provision specifying the burden of proof as HAR § 16-201-20(d) [sic].  The applicable rule is HAR § 16-201-21(d), and it provides that the "party initiating the proceeding" has the burden of proof by a preponderance of the evidence.

[25]    HRS § 432E-1.4(b) (2005) sets forth the criteria for "medically necessary" treatment, and provides that:

>          (b) A health intervention is medically necessary if it is recommended by the treating physician or treating licensed health care provider, is approved by the health plan's medical director or physician designee, and is:
>
>> (1) For the purpose of treating a medical condition;
>>
>> (2) The most appropriate delivery or level of service, considering potential benefits and harms to the patient;
>>
>> (3) Known to be effective in improving health outcomes; provided that:
>>
>>> (A) Effectiveness is determined first by scientific evidence;
>>>
>>> (B) If no scientific evidence exists, then by professional standards of care; and
>>>
>>> (C) If no professional standards of care exist or if they exist but are outdated or contradictory, then by expert opinion; and
>>
>> (4) Cost-effective for the medical condition being treated compared to alternative health interventions, including no intervention. For purposes of this paragraph, cost-effective shall not necessarily mean the lowest price.

have lost her medically necessary coverage without experts to successfully challenge" the opinion of Evercare's expert. Finally, Delos Santos makes a policy argument that:

> a denial of expert fees as reasonable costs creates an incentive for a managed care plan to routinely offer expert witness opinions in the external review knowing or expecting the opinions to be unopposed because managed care plan enrollees will have to pay out-of-pocket for an expert opinion and will not be reimbursed. Such an interpretation would create disincentives for managed care plan enrollees to even request an external review in the first place because they cannot expect, even if they prevail as [Delos Santos] did, to be put in the position they would have been if the managed care plan had not denied coverage in the first place. The legislative purpose of the external review statute would surely be thwarted.

Delos Santos's arguments are persuasive.

Evercare argues that, in the litigation context, the Hawaiʻi Supreme Court has stated that expert witness fees were not within the scope of the HRS § 607-9 costs statute, citing Mist v. Westin Hotels, Inc., 69 Haw. 192, 201-02, 738 P.2d 85, 92-93 (1987).[26] Evercare asserts that Delos Santos "cite[d] no case law for the proposition that expert witness fees are taxable costs under HRS § 432E-6(e)." Citing examples in other statutes, Evercare argues that: "[i]f the Legislature had wanted to allow for recovery of expert witness fees incurred in connection with the external review, it would have specifically referenced expert witness fees — as it has done, when that was the legislative intent."[27]

---

[26] Similar to Delos Santos's argument here, the hotel defendants in Mist argued that they could not have presented an adequate defense without obtaining the opinions held by experts and medical providers. Mist, 69 Haw. at 202, 738 P.2d at 93. The supreme court, however, noted that, assuming the expert opinions obtained were necessary for trial preparation, it did not necessarily follow that the expense incurred should be taxed as a cost against plaintiffs. Id.

[27] Evercare cited to the following statutes as expressly providing for expert witness fees: HRS § 486H-11(b) (2008) (providing that in personal injury actions brought by a plaintiff against a gasoline dealer, a prevailing plaintiff "shall be awarded reasonable attorneys' and expert witness fees . . . ."); HRS § 671-19 (2013) (providing that in proceedings before the medical inquiry and conciliation panel, "[t]he panel may award costs, or a portion thereof, including attorney's fees, witness fees including those of
(continued...)

25

The issue here is whether the absence of an express provision for expert witness fees in HRS § 432E-6(e) evidences a legislative intent to categorically exclude expert witness fees from being considered as part of "costs." For the reasons explained below, we conclude that "costs" does not categorically exclude expert witness fees under the circumstances of this case and the statutory construction principles that apply to this Chapter.

> **1. The conflict-of-laws provision under HRS § 432E-2 applies when construing the undefined term "costs" in HRS § 432E-6(e).**

Delos Santos argues that HRS § 432E-2 evidences legislative intent that Chapter 432E was "expressly granted primacy over any other law that might be construed to diminish the protections or rights afforded enrollees[.]" Thus, to the extent "any other law" conflicts with the "greater protection or rights to the enrollee" under HRS Chapter 432E, this argument urges that the Legislature intended that the broader protection or rights of the enrollee under the Chapter must prevail. See HRS § 432E-2.

HRS § 432E-6(e) does not specify what is included in "costs," and we may look to "legal or other well accepted dictionaries" for its ordinary meaning. Omiya, 142 Hawaiʻi at 449, 420 P.3d at 380. "Cost" is defined as: "[t]he amount paid or charged for something; price or expenditure." *Cost*, Black's Law Dictionary (11th ed. 2019). "Legal costs" is defined as: "[a]ttorney's fees and other expenditures related to a lawsuit." *Legal costs*, Black's Law Dictionary (11th ed. 2019). "Taxable cost" is defined as, "[a] litigation-related expense that the prevailing party is entitled to as part of the court's award."

---

[27](...continued)
expert witnesses, filing fees, and costs of the medical inquiry and conciliation panel proceedings to the party applying therefor."); HRS § 584-16 (1997) (providing that in family court proceedings, the court "may order reasonable fees of counsel, experts, and the child's guardian ad litem, and other costs of the action and pre-trial proceedings, including genetic tests . . . .").

*Taxable cost*, <u>Black's Law Dictionary</u> (11th ed. 2019). Under these definitions, expert witness fees are not categorically excluded from the term "costs."

As Evercare points out, however, the weight of authority in Hawaiʻi -- in case law and statute, provides that "costs" do not include expert witness fees. See <u>Mist</u>, 69 Haw. at 202, 738 P.2d at 92 (holding that in the trial context, "[e]xpert witness fees are not taxable as costs, absent a statute specifically allowing such an expense"); <u>Buscher v. Boning</u>, 114 Hawaiʻi 202, 222, 159 P.3d 814, 834 (2007) ("'Costs' are those properly awardable under HRS § 607-9[.]"). Hawaiʻi's costs statute, HRS § 607-9,[28] does not include expert witness fees. Thus, the "'general and popular use'" of the term "costs" in Hawaiʻi does not include expert witness fees. <u>Omiya</u>, 142 Hawaiʻi at 449, 420 P.3d at 380 (citations omitted).

Under HRS § 432E-2, if there is a conflict with "any other law," Chapter 432E must prevail to the extent it offers "greater protection or rights to the enrollee." We conclude that there is a conflict between the "other law" in Hawaiʻi described <u>supra</u> excluding expert witness fees from "costs," and the liberal construction that Delos Santos urges that we must afford to the term "costs," in light of the necessity of expert witnesses and the burden of proof Delos Santos faced. HRS § 432E-2 expresses the Legislature's intent that Chapter 432E "shall prevail" over "any other law" that offers less "protection or rights to the

---

[28] HRS § 607-9 (1989) provides:

**§607-9. Cost charges exclusive; disbursements**

[(a)] No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

[(b)] All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.

27

enrollee." Here, the categorical exclusion of expert witness fees from the term "costs" in other Hawaiʻi law conflicts with the "greater protection or rights to the enrollee" under HRS Chapter 432E. Under these circumstances, the conflict-of-law provision under HRS § 432E-2 applies, and we must apply a construction of the term "costs" that is consistent with the "greater protection or rights to the enrollee" and the remedial purpose of Chapter 432E.

> **2.      In view of the burden of proof placed on Delos Santos to demonstrate that the proposed reduction of services was unreasonable and the existing level of services was "medically necessary" under HRS § 432E-1.4, the requested expert witness fees cannot be categorically excluded as "costs."**

In this case, the Second External Review Order, in a 2-1 split decision, concluded that Delos Santos "failed to prove by a preponderance of the evidence that 24/7 skilled nursing care in the home is medically necessary for [Daughter]." The Order stated: "the Panel in a majority decision finds and concludes pursuant to HRS § 432E-6(a)(7) that [Delos Santos] failed to prove by a preponderance of the evidence that [Evercare] acted unreasonably in reducing the skilled nursing home care hours for [Daughter] to 96 hours per week." When Delos Santos appealed to the Circuit Court, the Circuit Court reversed in favor of Delos Santos based on the testimony of Delos Santos's Skills Check experts. The Circuit Court specifically cited Delos Santos's experts' testimony including that the Skills Check by Nurse Rogers "failed to meet the standard of care in several material respects."

Under HRS § 432E-6(a)(7)(B),[29] the external review panel must "determine whether the managed care plan involved acted reasonably," and must consider, *inter alia*, "[w]hether the medical director properly applied the medical necessity criteria in section 432E-1.4 in making the final determination." Subsection (b) of the "medical necessity" statute, HRS § 432E-1.4, provides that a "health intervention"[30] is medically necessary if it is recommended by the treating physician and

---

[29]    HRS § 432E-6(a)(7) (2005) (repealed 2011) pertinently provided:

(7) The review panel shall review every final internal determination to determine whether the managed care plan involved acted reasonably. The review panel and the commissioner or the commissioner's designee shall consider:

. . . .

(B) Whether the medical director properly applied the medical necessity criteria in section 432E-1.4 in making the final internal determination;

. . . .

[30]    HRS § 432E-1.4(d) defines "health intervention" as follows:

"Health intervention" means an item or service delivered or undertaken primarily to treat a medical condition or to maintain or restore functional ability. A health intervention is defined not only by the intervention itself, but also by the medical condition and patient indications for which it is being applied. New interventions for which clinical trials have not been conducted and effectiveness has not been scientifically established shall be evaluated on the basis of professional standards of care or expert opinion. For existing interventions, scientific evidence shall be considered first and to the greatest extent possible, shall be the basis for determinations of medical necessity. If no scientific evidence is available, professional standards of care shall be considered. If professional standards of care do not exist or are outdated or contradictory, decisions about existing interventions shall be based on expert opinion. Giving priority to scientific evidence shall not mean that coverage of existing interventions shall be denied in the absence of conclusive scientific evidence. Existing interventions may meet the definition of medical necessity in the absence of scientific evidence if there is a strong conviction of effectiveness and benefit expressed through up-to-date and consistent professional standards of care, or in the absence of such standards, convincing expert opinion.

(Emphasis added).

29

approved by the medical director of the health plan, and meets the remaining criteria under subsections (b)(1) through (b)(4). Subsection (c) provides, *inter alia*, that when the treating physician and health plan medical director "do not agree on whether a health intervention is medically necessary," an external reviewing body must consider, but "shall not be bound by" the recommendations of both. HRS § 432E-1.4(d) provides that for "existing interventions," medical necessity determinations should first consider scientific evidence; and if unavailable, then "professional standards of care" must be considered. It further explains that "decisions about existing interventions <u>shall be based on expert opinion</u>" where professional standards of care are "contradictory[.]" (Emphasis added). Thus, where there are contradictory professional standards of care in determining whether an existing health intervention is medically necessary, HRS § 432E-1.4(d) requires that the external review panel consider expert opinions in making its determination.

Here, Daughter's PCP's recommendation that the existing level of services remain unchanged, conflicted with Evercare's medical director's determination that the existing level of 24/7 covered nursing services was not medically necessary based on Nurse Rogers' assessment. There was a dispute as to whether the medical necessity criteria were met under HRS § 432E-1.4(b). Delos Santos's experts opined that Nurse Rogers' Skills Check assessment was not in accordance with the standard of care and thus, the proposed reduction in Daughter's covered skill nursing services was unreasonable. Under these circumstances, in light of the dispute over the medical necessity of maintaining Daughter's existing level of coverage of 24/7 skilled nursing services, Delos Santos had the burden of proof at the external review to refute the contradictory standard of care put forth by Evercare's contrary expert opinion. <u>See</u> HAR § 16-201-21(d); HRS § 432E-1.4(b) and (d); HRS § 432E-6(a)(7)(B). The record clearly reflects that Delos Santos's experts were critical to Delos Santos's ability to ultimately overturn the Second External

Review Panel's decision that Delos Santos had failed to prove that the existing level of services was "medically necessary" for Daughter.

Under the circumstances of this case, construing HRS § 432E-6(e) to allow the recovery of expert witness fees incurred by Delos Santos as "costs" is consistent with the liberal construction we must apply to fulfill the remedial purpose of HRS § 432E-6(e). See Kalima, 111 Hawaiʻi at 100, 137 P.3d at 1006. Allowing expert witness fees to be recoverable as costs is also consistent with the legislative purpose of Chapter 432E to protect the health and safety of patients and strengthen their consumer rights through the external review procedure. See 1998 Haw. Sess. Laws Act 178, § 1 at 662; 1999 Haw. Sess. Laws Act 137, § 1 at 440. A broader construction of the term "costs," that does not categorically exclude expert witness fees, is also consistent with the greater protection of an enrollee's rights under Chapter 432E that we must apply under the conflict-of-laws provision of HRS § 432E-2.

For the reasons set forth above, the Circuit Court and the Commissioner erred in their legal conclusion that expert witness fees are categorically excluded as "costs" under HRS § 432E-6(e). See United Pub. Workers, 106 Hawaiʻi at 363, 105 P.3d at 240.

### IV.    CONCLUSION

For the foregoing reasons, the May 4, 2017 Order Dismissing Appeal and Affirming Commissioner's Order Awarding Attorneys' Fees and Costs and the June 6, 2017 Final Judgment, both filed by the Circuit Court of the First Circuit, are vacated; and we remand to the Circuit Court with instructions to remand to the Insurance Commissioner to consider, in the Commissioner's discretion, the request for the subject attorney's

<u>NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER</u>

fees and expert costs under HRS § 432E-6(e) consistent with this memorandum opinion.

DATED:  Honolulu, Hawaiʻi, February 24, 2023.

On the briefs:

Rafael G. Del Castillo,
(Rafael Del Castillo &
Associates),
for Appellant-Petitioner-
Appellant.

Dianne Winter Brookins,
(Dentons US LLP),
for Appellee-Respondent-
Appellee Evercare.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge