**NOT FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000572
27-FEB-2023
08:36 AM
Dkt. 147 SO**

NO. CAAP-17-0000572


IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAI‘I


LYNN BROWN AND WARREN BROWN, AS SUCCESSOR TRUSTEES
OF THE FOLEY FAMILY TRUST, Plaintiffs-Appellees,
v.
BWC HAWAII, LLC., A HAWAII LIMITED LIABILITY COMPANY,
THURSTON K. ROBINSON AND DOUGLAS M. PATTERSON,
Defendants-Appellants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 10-1-0196)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)


Defendants-Appellants, BWC Hawaii, LLC, a Hawaii Limited Liability Company, Thurston K. Robinson (**Robinson**), and Douglas M. Patterson (**Patterson**) (collectively, **BWC**) appeal from the (1) July 19, 2017 Final Judgment Pursuant to Haw. R. Civ. P. 58 in Favor of Plaintiffs Lynn Brown and Warren Brown (**Brown**), in Their Capacities as Successor Trustees of the Foley Family Trust (collectively, **Trust**) and Against Defendants BWC Hawaii, LLC, Thurston K. Robinson and Douglas M. Patterson (**Final Judgment**); (2) June 14, 2017 Order Partially Granting Plaintiff's Motion for an Award of Attorney's Fees Against Defendants BWC Hawaii, LLC, Thurston K. Robinson, and Douglas M. Patterson, Jointly and Severally, Filed on March 8, 2017 (**Order Granting Attorney's Fees**); (3) February 27, 2018 Order Granting Defendant's Motion for Review by the Court of the Order of the Clerk of the Court Taxing Costs in the Amount of $24,339.14, Filed February 22,

2017, and Awarding Costs in the Amount of $9,540.74 (**Order Awarding Costs**);[1] and (4) December 28, 2016 Findings of Fact, Conclusions of Law, and Order (**FOFs/COLs**), all filed and entered by the Circuit Court of the Third Circuit (**Circuit Court**).[2]

On appeal, BWC raises three points of error (**POEs**) contending that the Circuit Court erred by: (1) "entering judgment in favor of the Trust because the record does not support its determination that BWC breached the lease or that BWC was unjustly enriched, neither the Second Amended Complaint nor the evidence support the [Circuit Court]'s tenancy at sufferance decision, and there was no relevant or reliable evidence to support the [Circuit Court]'s erroneous market rental damage award," and challenging FOFs 12-16, 18-27, 29-42, 44-135, and COLs 1-56; (2) "holding Robinson and Patterson jointly and severally liable and in refusing to apply the time is of the essence provision of the Option to the entire option/purchase procedure," and challenging FOFs 9-10, 22-24, and COLs 1-32; and (3) abusing its discretion in awarding the Trust attorneys' fees, certain expert witness fees, and deposition costs that are "not permitted under Hawaii law and not reasonable[.]"[3]

We hold that the Circuit Court did not err in entering judgment in favor of the Trust based on its determination that BWC breached the Lease, did not err in finding Robinson and Patterson jointly and severally liable, and did not abuse its discretion in the award of attorneys' fees and costs. We thus affirm.

---

[1]    The Honorable Henry T. Nakamoto presided over the April 5, 2017 hearing on the Motion for Review by the Court of the Order of the Clerk of the Court Taxing Costs in the Amount of $24,339.14 (**Motion for Review**) and Plaintiffs' Motion for an Award of Attorney's Fees Against Defendants BWC Hawaii, LLC, Robinson and Patterson, Jointly and Severally (**Motion for Attorney's Fees**), and filed the Final Judgment, Order Granting Attorney's Fees, and Order Awarding Costs.

[2]    The Honorable Glenn S. Hara presided over the 2016 bench trial and filed the FOFs/COLs.

[3]    While BWC lists numerous FOFs and COLs in its POEs section, BWC does not present specific arguments relating to the challenged FOFs and COLs. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) (requiring argument on the points of error and stating "[p]oints not argued may be deemed waived").

## I. BACKGROUND

This lengthy dispute concerns a lease of premises consisting of several adjacent parcels, which included a warehouse style building, a commercial laundry operation, and offices for support staff located at 865 Kinoole Street (**Premises**) in Hilo, Hawaiʻi.

On June 1, 1994, Edward F. Foley (**Foley**), as predecessor trustee of the Trust, and Michael Gorelangton (**Gorelangton**) and Patricia Gorelangton, on behalf of SWL, Inc., entered into a 25-year lease agreement (**Lease**) for the Premises. The Lease included an option to purchase the Premises (**Option**), which could be exercised during a specified time frame between May 20, 2009 to June 10, 2009; however, the Option contained no specified purchase price.[4]  In 1997, SWL, Inc. assigned its

---

[4]      In summary, the Option required that within ten days of exercising the Option, the parties were required to submit escrow instructions to consummate the sale and close the sale by July 1, 2009.  However, if the parties failed to agree upon a purchase price, then the parties were required to go through an appraisal process pursuant to subsection (f).  Subsection (f) required that each party "appoint a duly licensed (Hawaii) real estate appraiser" and the chosen appraisers "appoint a third all of whom will appraise the fair market value of the Premises."  The average of the two appraised values which were the closest would then be the purchase price. The relevant Option terms were as follows:

> (a)  Lessor does hereby grant to Lessee an option to purchase the Premises and the Lessor's interest under this Lease, upon the terms and conditions herein set forth.
>
> (b)  Lessee must exercise the option to purchase, if it is to be exercised at all, during the period from May 20, 2009 to June 10, 2009, hereinafter referred to as the "Option Period".
>
> (c)  In order to exercise the option to purchase herein granted, Lessee must give written notice of the exercise of the option to Lessor and Lessor must receive the same during the Option Period, time being of the essence, and if not so given and received, this option shall automatically expire. At the same time the option is exercise [sic], Lessee must deliver to Lessor a cashier's check for $100,000, payable to Foley Family Trust, to be part of the purchase price.
>
> (d)  The provisions of paragraph 39, including the provision relating to default of Lessee set forth in paragraph 39.4 of this Lease are conditions of the Option;
>
> (e)  If Lessee shall exercise the option to purchase during the Option Period, the transfer of title to Lessee and the
> (continued...)

interest in the Lease and the Option to BWC (**Assignment**). Concurrently with the Assignment, Robinson and Patterson, who were members of BWC, signed a Guaranty of Lease and Indebtedness (**Guaranty**), guaranteeing all payments due from BWC to the Trust under the terms of the Lease and the Option.

    **Exercise of the Option, appointment of appraisers**

    On June 8, 2009, pursuant to the Option, BWC timely exercised its right to purchase the Premises and paid $100,000 to the Trust. BWC provided an appraisal report by Glenn Kunihisa (**Kunihisa**); however, the Trust noted that the appraisal was done for the "purposes of obtaining federally-related mortgage financing" and not "intended for any other use." BWC then retained Kunihisa to do the appraisal for the Option and submitted another appraisal report of the Premises on July 15,

---

[4](...continued)
   payment of the purchase price to Lessor shall occur on July 1, 2009, and until that time the terms of this Lease shall remain in full force and effect.

   (f) The purchase price to be paid by Lessee to Lessor for the Premises . . . shall be all cash. If Lessor and Lessee are unable to agree on a price, then Lessor and Lessee shall each appoint a duly licensed (Hawaii) real estate appraiser and these two shall appoint a third all of whom will appraise the fair market value of the Premises. The average of the two appraised values which are closest shall be the purchase price.

   (g) Within ten (10) days of the date the option to purchase is exercised, Lessor and Lessee shall give instructions to consummate the sale to First American Title Insurance Company, who shall act as escrow holder, on the normal and usual escrow forms then used by such escrow holder, as follows:

     (i) Escrow shall close on the date previously called for in paragraph (e) of this Addendum;

     (ii) Lessor shall deposit the check referred to in paragraph (c) of this Addendum into escrow upon opening thereof . . .

     . . . .

     (v) Interest, if any, and rents will be prorated to the close of escrow . . . .

2009.  The parties were unable to agree on a purchase price, and commenced the appraisal process under the Option.

The Trust retained Jan Medusky (**Medusky**) as their appraiser.  In order to obtain an accurate appraisal of the Premises, Medusky needed to retain a cost estimator for the specialized improvements on the Premises and wanted access to the interior of the Premises.  BWC initially refused to provide Medusky and the cost estimator access to the Premises and demanded as a precondition that escrow be opened and the monies deposited.  BWC eventually accommodated Medusky and the estimator for a viewing of the Premises, and Medusky submitted his report on January 18, 2010.

**Appointment of third appraiser**

After the appraisals were completed by each side's appraiser, BWC and the Trust disagreed over escrow instructions and the process of appointing the third appraiser.  Eventually the dispute was submitted to the Circuit Court for resolution, at which time the parties agreed that the third appraiser would be selected by Medusky and Kunihisa, and that information to the third appraiser would be limited to "necessary information to conduct an appraisal in conformance with usual and standard appraisal practices."  After the initial third appraiser was appointed, BWC accused this appraiser of being "tainted" by Kunihisa and Medusky with improper information.  Because of the allegations, Kunihisa refused to participate further and resigned on June 9, 2011.

BWC refused to reappoint another appraiser and the parties had additional disagreements about the process.  Eventually, on June 29, 2011, BWC appointed Steven Chee (**Chee**) as their new appraiser.  Chee and Medusky agreed on the third appraiser, Paul Cool (**Cool**).  BWC again claimed that Cool was "tainted" by Medusky because of improper ex parte communications. BWC filed a motion to disqualify Cool, which was denied, and Cool submitted his appraisal report on January 23, 2013.

After the appraisals were completed, BWC had trouble obtaining financing secured by the Premises.  On April 27, 2015, nearly six years after the exercise of the Option, BWC purchased the Premises for $1,539,000.00.  From July 1, 2009 until the April 27, 2015 closing, BWC had remained in possession of the Premises and paid no rent to the Trust.

**Action filed to collect rent from July 1, 2009**

On July 8, 2010, the Trust filed a complaint against BWC seeking to recover unpaid rents from July 1, 2009 until the 2015 closing, alleging that the Lease was still in effect until escrow closed.  On September 20, 2010, BWC filed its answer and a counterclaim, alleging that the Trust was responsible for delaying the closing, breaching the contract, along with other counterclaims.  The Trust filed an amended complaint alleging, *inter alia*, that it was excused from performing its obligations under the Option, and adding Robinson and Patterson as defendants.

**2016 Trial**

Following a bench trial in May and June of 2016, the Circuit Court entered its FOFs/COLs finding, *inter alia*, that BWC breached the Lease when it withheld rent because the Lease did not terminate on July 1, 2009 upon the exercise of the Option, and that any representations by Foley to BWC were made on the basis that escrow would close and title transferred.  The Circuit Court concluded that if the parties failed to agree on a purchase price, the July 1, 2009 closing date was unreasonable pursuant to the appraisal process in subsection (f) of the Option, and that the parties did not assume what would occur if the parties failed to agree on a purchase price by July 1, 2009.  Further, the Circuit Court concluded that BWC breached the covenants of good faith and fair dealing relating to the Option when it interfered with the appraisal process on or around June 9, 2011, when Kunihisa withdrew as BWC's appraiser and BWC refused to reappoint a new appraiser.  Additionally, the Circuit Court found that BWC caused delays by attempting to control the appraisal process such

6

as by consistently requesting to pick the third appraiser, alleging the third appraisers were "tainted," and refusing access to the Premises for the Trust to complete its appraisal.

**Fees and Costs**

On February 22, 2017, the Trust filed Plaintiffs' Request for Taxation of Costs by the Clerk of the Court Against Defendants BWC Hawaii, LLC, Robinson and Patterson, Jointly and Severally (**Request for Taxation of Costs**), which the Clerk granted in the amount of $24,339.14. On March 3, 2017, BWC filed their Motion for Review. On March 8, 2017, the Trust also filed their Motion for Attorney's Fees.

On April 5, 2017, a hearing on the Motion for Review and Motion for Attorney's Fees was held. At the hearing, the Circuit Court awarded $9,540.74 in costs to reflect the removal of expert witness fees. On June 14, 2017, the Circuit Court filed its Order Granting Attorney's Fees in the amount of $230,082.71, finding that the fees awarded were reasonable under the Lease.

On July 19, 2017, the Circuit Court entered Final Judgment in favor of the Trust for $1,013,385.17. This timely appeal followed.

## II. STANDARDS OF REVIEW

### A. FOFs/COLs

"[A] trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." Chun v. Bd. of Trs. of the Emps.' Ret. Sys. of the State of Haw., 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (citations and internal quotation marks omitted). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. [The Hawai'i Supreme Court has] defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Leslie v. Est. of

7

<u>Tavares</u>, 91 Hawaiʻi 394, 399, 984 P.2d 1220, 1225 (1999) (citations and internal quotation marks omitted).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [The appellate court] ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

<u>Chun</u>, 106 Hawaiʻi at 430, 106 P.3d at 353 (citations and internal brackets omitted) (quoting <u>Allstate Ins. Co. v. Ponce</u>, 105 Hawaiʻi 445, 453, 99 P.3d 96, 104 (2004)).

### B.     **Taxation of Costs**

> The award of a taxable cost is within the discretion of the circuit court and will not be disturbed absent a clear abuse of discretion. An abuse of discretion occurs when the circuit court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

<u>Pulawa v. GTE Hawaiian Tel</u>, 112 Hawaiʻi 3, 10-11, 143 P.3d 1205, 1212-13 (2006) (citations, brackets, and internal quotation marks omitted).

### C.     **Attorneys' Fees**

> The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard. The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. In other words, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

<u>Ass'n of Apartment Owners of Discovery Bay v. Mitchell</u>, 134 Hawaiʻi 251, 254, 339 P.3d 1052, 1055 (2014) (citations and internal quotation marks omitted).

### III. DISCUSSION

### A.     **POE 1: Breach of the Lease**

BWC contends that the Circuit Court erred in entering judgment in favor of the Trust because the record does not

support its determination that BWC breached the Lease. BWC argues that if BWC is found not liable on the basis of breach of contract, the Circuit Court also erred in holding that BWC was liable to the Trust under the alternative theories of doctrine of tenancy at sufferance and unjust enrichment, and that the award of market rental damages under these alternative theories were based on unreliable and irrelevant testimony. We address the arguments based on breach of the Lease as that issue is dispositive, and we do not reach BWC's alternative arguments in this POE.

> **The Circuit Court's mixed finding and conclusion, that the Lease did not terminate until escrow closed, was not clearly erroneous.**

BWC argues that upon the exercise of the Option, the Lease terminated on July 1, 2009, and that Foley made representations that upon the timely exercise of the Option, no further rent would be sought after July 1, 2009. BWC points to the specific July 1, 2009 closing date and Gorelangton's testimony that at the time of negotiating the Option, Gorelangton believed that "even if there was a delay in the closing, . . . the lease would terminate as of July 1, 2009." BWC also points to the testimonies of its previous attorney, Robinson, and Patterson, in arguing that Foley made representations that no rent would be sought after July 1, 2009, and the $100,000 would be placed in an escrow account and applied to the purchase price.

The Circuit Court found in FOFs 26, 30, and 31:

> 26. When Gorelangton negotiated the terms of the Option, it never occurred to him that the purchase price might not be determined by July 1, 2009. [Gorelangton trial testimony, 50:12-18]
>
> . . . .
>
> 30. Although BWC claims that the rents payable on the lease would have terminated on July 2009, there are no explicit provisions in the option supporting this position. Any statements that may have been made by Foley that rents would have ended on July 1, 2009 are consistent with a sale that would have closed on July 1, 2009, because at such time, BWC would be both the holder of the fee simple interest in the Premises and the lessee. In such a circumstance after BWC's purchase of the Premises, it would be up to BWC as to how to

9

> treat the lease and to forgo any rents or to cancel the lease.
>
> 31. The court finds that if there were any representations by Foley made to the effect that lease rents would be terminated upon the exercise of the option, it can only be construed to have meaning within the context of completing the sale under the option.

In COLs 9, 10, and 16, which present mixed questions of fact and law, the Circuit Court concluded:

> 9. The Option did not affect the lease except for the occurrence of the sale of the premise [sic] to the lessee. In particular, if the option was not exercised it is obvious that the lease would continue to run until the term specified in the lease unless there was some other reason for an earlier termination. It is not logical that if there were an attempted but ineffective attempt to exercise the option, or a successful exercise but an unsuccessful execution of the terms of the option to sale, that the terms of the lease would be terminated.
>
> 10. There was no agreement in the Lease or the Option, express or implied that the obligation of the tenant to pay rent would terminate on the exercise of the Option by the leases.
>
> . . . .
>
> 16. The interpretation of paragraph "(e)" of the Option that most reasonably reflects the intention of the parties as manifested by the Option in its entirety is that the terms of the Lease until the close of the sale of the Premises if not on July 1, 2009, then within a reasonable time to accomplish the sale. The lease terms and the obligations continued to apply through the date that title was transferred and the purchase price was paid, namely, April 27, 2015.

In <u>Porter v. Hu</u>, 116 Hawaiʻi 42, 59-60, 169 P.3d 994, 1011-12 (App. 2007) (quoting <u>State v. Eastman</u>, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996)), this court stated:

> It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part . . . . An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.

BWC's arguments are based on its contrary view of the evidence, relying on its own witnesses, and are unavailing. <u>See</u> <u>id.</u> It was properly within the Circuit Court's province to weigh the evidence and consider the witnesses' testimonies in determining

10

that the Lease did not terminate on July 1, 2009 upon the exercise of the Option; that this interpretation reasonably reflected the intent of the parties; and that any representations made by Foley were made on that basis. BWC offers no argument why the FOFs and COLs set forth <u>supra</u> are clearly erroneous. <u>See</u> HRAP Rule 28(b)(7); <u>Chun</u>, 106 Hawaiʻi at 430, 106 P.3d at 353. BWC fails to demonstrate error. <u>See</u> HRAP Rule 28(b)(7); <u>Haw. Ventures, LLC v. Otaka, Inc.</u>, 114 Hawaiʻi 438, 480, 164 P.3d 696, 738 (2007) (finding that the appellants failed to demonstrate error because they "do not point to anything in the record or provide any analysis that would guide th[e] court in determining the validity of their contention"). We conclude there is substantial evidence to support the Circuit Court's determination that the lease terms and obligations continued to apply through the date title transferred and the purchase price was paid on April 27, 2015.

> **The Circuit Court's findings that BWC, not the Trust, caused the delays, were not clearly erroneous.**

BWC argues that the record established that as of July 1, 2009, BWC was willing and ready to close escrow; however, the Trust caused unilateral delays by refusing to abide by the "time is of the essence" clause and failing to open an escrow account. BWC points to various emails to the Trust's attorney and Robinson's testimony, to argue that BWC consistently asked the Trust to open an escrow account, to deposit the $100,000 into the account, and to follow the terms of the Option. BWC also refers to Robinson's testimony that BWC was willing to purchase the Premises, but the Trust repeatedly failed to agree to a purchase price and had no sense of "urgency."

The Circuit Court found in FOFs 56 and 57, that the Option "places no time limit" on when an agreement on the purchase price must be reached, and that as of July 1, 2009, the parties were "still trying to reach [an] agreement[.]" The Circuit Court found that the appraisal process in subsection (f) of the Lease was "triggered" because of the lack of agreement on

11

a purchase price, and that BWC caused the delays in the appraisal process, as follows:

> 66. On July 3, 2009, Watts [(the Trust's former attorney)] sought permission for Medusky to inspect the Premises on July 7, 2009. Fasi [(BWC's former attorney)] responded that July 7th was not a good day for the inspection. [Exhibit P-33]
>
> 67. Because Medusky was going to the Big Island on another job on July 7th, he stopped by the Premises on that date but was denied permission to inspect the interior.
>
> . . . .
>
> 70. On September 8, 2009, Watts informed Fasi that a decision had been made to hire a building consultant and that both Medusky and the building consultant would need access to the interior of the building. [Exhibit P-39] Fasi responded with a message stating that, "Before your consultant is allowed onto the property, my client demands that the escrow be opened and the deposit monies deposited into same and that a third appraiser be chosen or at least the process of selecting the third appraiser is begun by Mr. Medusky providing some names to me to select from." [Exhibit P-40]
>
> . . . .
>
> 75. Although both Foley and BWC prepared and attempted to agree on escrow instructions, so that escrow could be opened, they were unsuccessful in reaching agreement until they signed the Commercial Escrow Instructions dated January 23, 2015.
>
> . . . .
>
> 95. BWC attempted to control the process for determination of the purchase price, and, as a result, the determination of the purchase price was delayed.
>
> . . . .
>
> 97. Initially, BWC took the position that the parties could provide the third appraiser with information relative to the value of the Premises. This early position of BWC is shown in the form of escrow instructions that BWC proposed on July 10, 2009, . . . .
>
> 98. However, after Medusky published his appraisal report on January 18, 2010, BWC took the position that the parties could convey no information concerning their opinion of the value of the Premises to the third appraiser. This change in position was first stated by BWC in the escrow instructions that Fasi sent to Watts on May 6, 2010. [Exhibit P-58]
>
> 99. Because of BWC's change in position, Foley and BWC were unable to agree on a procedure for selecting the third appraiser.

. . . .

> 102. After the court's decision, Kunihisa and Medusky conferred and tentatively appointed appraiser James Hallstrom as the third appraiser. However, BWC became concerned that [the initial third appraiser] may have been provided with improper information and, acting through Fasi, instructed Kunihisa to withdraw his appointment. [Kunihisa Deposition Transcript 19:21-21 :12; 26:7-14; 28:13-20]
>
> 103. Kunihisa became upset with BWC's attempt to interfere in the process of selecting a third appraiser and on June 9, 2011, "resigned" from the selection process. [Kunihisa Deposition Transcript 28:21-29:19; 41:24-43:15]
>
> 104. Following Kunihisa's resignation, Foley demanded that BWC appoint a new appraiser and that the new appraiser perform his own appraisal, as required by the Option. [Exhibit P-66]
>
> 105. Initially, BWC refused to appoint a new appraiser and took the position that it could continue to use the Kunihisa appraisal and could select the third appraiser itself. [Exhibit P-67]  Watts responded that Foley would not agree to amend the Option to allow BWC to select the third appraiser. [Exhibit P-68]

The Circuit Court concluded in COL 55, a mixed finding and conclusion, that:

> 55. For the period between June 8, 2009 when the Option was exercised to June 9, 2011, BWC has failed to prove, by the preponderance of the evidence, that Foley or Plaintiffs have breached the implied covenant of good faith and fair dealing by proof that conduct of a party (the Trust/lessor) constituted evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power as to specific terms, [or] interference with or failure to cooperate in the other party's performance, the conduct is not actionable unless it results in monetary damage to the party claiming the breach. Restatement (Second) of Contracts § 205 cmt. d (1979); [Kuroda v. SPJS Holdings, LLC], 971 A. 2d 872, 888 (Del. Ch. 2009); [Francis v. Lee Enterprises], 89 Haw. 234, 971 P. 2d 707 (1999).  <u>To the contrary, the court finds that the delays in the closing of the sale which may have resulted in the payments of rents that could have been avoided by an earlier sale resulted from the conduct of BWC as specified above.</u>

(Emphasis added).

The Circuit Court as fact-finder found that BWC was responsible for causing delays in the process.  COL 55.  <u>See</u> <u>Porter</u>, 116 Hawaiʻi at 59-60, 169 P.3d at 1011-12.  BWC's argument relies on its contrary view of the evidence based on its own witnesses, and is unavailing.  <u>See</u> <u>id.</u>  BWC offers no

13

argument why these FOFs and mixed FOF and COL above are clearly erroneous based on a lack of substantial evidence.  See Chun, 106 Hawaiʻi at 430, 106 P.3d at 353.  BWC fails to demonstrate error.  See HRAP Rule 28(b)(7); Haw. Ventures, LLC, 114 Hawaiʻi at 480, 164 P.3d at 738.

> **The Circuit Court's finding, that the "time being of the essence" provision in subsection (c) of the Option refers only to the exercise of the Option, was not clearly erroneous.**

BWC argues that the "time being of the essence" provision in subsection (c) applied to the entire Option, including the appraisal process.[5]  BWC relies on the testimonies of its own witnesses — — Gorelangton, Robinson, and Patterson — — to argue that the "time being of the essence" provision applied to the entire Option including the appraisal process, and that this reading reasonably reflected the intent of the parties.

The Circuit Court found in FOFs 22-25 that "time being of the essence" applied only to the Option:

> 22. The court construed the "time being of the essence" language in Paragraph (c) of the option to refer only to the exercise of the option. It is clear from the manner in which the phrase is employed in the first sentence in Paragraph (c) that it is only to be applied as to the matter and timing of the exercise of the option by the lessee. The "time being of the essence" provision in Paragraph (c), does not apply generally to the other terms and provisions of the Option[.]
>
> 23. The longest time between the earliest date the Option could be exercised and the sale closing date of July 1, 2009, is about 41 days (May 20, 2009 to July 1, 2009). The shortest time between the latest date the Option could be exercised and the sale closing date is about 21 days (June 10, 2009 to July 1, 2009).
>
> 24. It was the intention of the parties to close the sale as quickly as practicable once the option was exercised. If the parties had agreed on a price at or about the time the option was exercised, the stated closing of July 1, 2009 was reasonable[.]
>
> 25. Upon the failure of the parties to reach an agreement as to price, however, the option called for a process of appraisals and under those circumstances the closing date of July 1, 2009 was not reasonable, as borne out by: (1) what

_____

[5]     This argument was raised in connection with POE 2, but we address it in our discussion here of POE 1.

transpired in fact after this process was resorted to by the parties, (2) given that the appraisal process called for the selection of an appraiser by each of the parties and that the two selected appraisers then selecting a third appraiser, and (3) as borne out by the appraisals submitted by the parties in evidence, the fact that the appraisal concerned a commercial/industrial property, and other unique aspects of the Premises including its location, and the scarcity of a comparable fee simple properties in the Hilo area.

The Circuit Court as the fact-finder weighed all witnesses' testimonies and found that the "time being of the essence" provision only applied to the exercise of the Option. See Porter, 116 Hawai'i at 59-60, 169 P.3d at 1011-12. BWC's argument based on its contrary view of the evidence is unavailing. See id. BWC offers no argument why the above FOFs are clearly erroneous based on a lack of substantial evidence. See Chun, 106 Hawai'i at 430, 106 P.3d at 353. BWC fails to demonstrate error. See HRAP Rule 28(b)(7); Haw. Ventures, LLC, 114 Hawai'i at 480, 164 P.3d at 738.

**B.    POE 2: Joint and several liability**

BWC argues that the Circuit Court erred in holding Robinson and Patterson jointly and severally liable because Foley induced them to sign the Guaranty through material representations that the Lease would terminate on July 1, 2009 upon exercise of the Option. BWC contends that "[t]he decision whether to hold a party jointly and severally liable is decided on a case-by-case basis, depending on whether it is appropriate under the circumstances," citing Smith v. Cutter Biological, Inc., a Div. of Miles Inc., 72 Haw. 416, 431, 823 P.2d 717, 725 (1991). BWC argues that it was not "appropriate" to hold Robinson and Patterson jointly and severally liable where they were induced by Foley's representations that no rent would be sought after July 1, 2009.

The Circuit Court found in FOFs 10[6] and 31 (quoted supra) that Robinson and Patterson signed the Guaranty, which

_____

[6]    FOF 10 stated: "On October 9, 1997, Robinson and Patterson signed personal guarantees pursuant to which they guaranteed all payments due from BWC to the Trust and under the terms of the Lease and Option. . . ."

guaranteed all payments due from BWC to the Trust under the terms of the Lease and Option, and that any representations made by Foley were to the effect that escrow would close and title transferred. The Circuit Court concluded in COL 18 that, "As guarantors of BWC's performance under the Lease, Robinson and Patterson are jointly and severally liable for BWC's breach of its obligation to pay rent."

BWC does not dispute that Robinson and Patterson signed the Guaranty and fails to explain how the FOFs set forth above were not supported by "substantial evidence." See Chun, 106 Hawaiʻi at 430, 106 P.3d at 353. The Circuit Court's findings reflect a rejection of BWC's argument that Robinson and Patterson never would have signed the Guaranty but-for Foley's material representations, and BWC fails to demonstrate error. See HRAP Rule 28(b)(7); Haw. Ventures, LLC, 114 Hawaiʻi at 480, 164 P.3d at 738.

### C. POE 3: Fees and Costs

### Expert witness fees

BWC argues that the Circuit Court abused its discretion when it failed to set aside "the additional travel costs because they were more appropriately classified as expert witness fees." BWC cites only to the transcript of the hearing on the Motion for Review and the Trust's Request for Taxation of Costs. BWC does not specifically cite to or identify which travel costs were more appropriately expert witness fees. This argument is waived. See HRAP Rule 28(b)(7); Haw. Ventures, LLC, 114 Hawaiʻi at 480, 164 P.3d at 738 (citation omitted) ("[T]his court is not obligated to sift through the voluminous record to verify [a party's] inadequately documented contentions.").

### Deposition costs

BWC contends that some of the deposition costs awarded were not permitted because (1) they included copies of depositions, citing Nani Koolau Co. v. K & M Constr., Inc., 5 Haw. App. 137, 143-44, 681 P.2d 580, 586 (1984); and (2) the cost of Brown's entire deposition was unreasonable, as only one page

16

of his deposition was used at trial and he was not called as a witness, citing <u>Mist v. Westin Hotels, Inc.</u>, 69 Haw. 192, 201, 738 P.2d 85, 92 (1978) (holding that deposition costs are taxable when deemed reasonable).  HRS § 607-9[7] has been amended since <u>Nani Koolau Co.</u> to include "expenses for deposition transcript originals and copies," and BWC's argument that the deposition copies awarded were not permitted is without merit.  HRS § 607-9.

BWC claims that the cost of Brown's entire deposition was unreasonable because Brown "was not called as a witness at trial" and that only "a small part of one page" of his deposition was used at trial.  BWC's argument is without merit.  <u>See Canalez v. Bob's Appliance Serv. Ctr., Inc.</u>, 89 Hawaiʻi 292, 308, 972 P.2d 295, 311 (1999) (holding that the trial court had the discretion to award cost for a deposition testimony that was not used at trial because the testimony was strategically on hand to possibly rebut the opposing party's case in chief); <u>Yoneji v. Yoneji</u>, 137 Hawaiʻi 299, 319-20, 370 P.3d 704, 724-25 (App. 2016) (explaining that whether a deposition cost is reasonable is within the discretion of the trial court and "'hinges upon the trial court's factual evaluation of the course and progress of the proceeding and the nature of the evidence'") (citation omitted).  The Circuit Court did not abuse its discretion in awarding these deposition costs.  <u>See Pulawa</u>, 112 Hawaiʻi at 10-11, 143 P.3d at 1212-13.

---

[7]     HRS § 607-9(b) (2016) provides:

All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for <u>deposition transcript originals and copies</u>, and other incidental expenses, <u>including copying costs</u>, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. . . .

(Emphases added).

17

**Attorney's Fees**

BWC contends that the Circuit Court abused its discretion when it failed to further reduce attorney's fees because, *inter alia*, the fees associated with a dismissed claim were not permitted; the fees should be apportioned between assumpsit and non-assumpsit claims; there were improper block billing entries; and time entries for ministerial and clerical work were improperly included. [OB at 33-34.]

***Dismissed claim.*** BWC argues that "the fees associated with the Trust's claim[,] that it was excused from performance of the Option[,] were not permitted because that claim was voluntarily dismissed by the Trust, therefore making BWC the prevailing party for purposes of Section 607-14,"[8] citing Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 31, 79 P.3d 119, 124 (2003) (holding that, as a presumption, the prevailing party should recover costs).

A party "will be deemed to be the successful party for the purpose of taxing costs and attorney's fees where that party prevails on the disputed main issue, even though not to the extent of his original contention." Kaleikini v. Yoshioka, 129 Hawaiʻi 454, 461, 304 P.3d 252, 259 (2013) (internal quotation marks and brackets omitted) (quoting Food Pantry Ltd. v. Waikiki Bus. Plaza, Inc., 58 Haw. 606, 618, 575 P.2d 869, 878 (1978)); see Food Pantry, 58 Haw. at 620, 575 P.2d at 879 (holding that although the trial court refused to allow the lessor to cancel the lease, the lessor was the prevailing party because "[t]he grant of relief was expressly conditioned upon either the lessee (1) cancelling the assignments and subleases or

---

[8]     HRS § 607-14 (2016) states in pertinent part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]

(Emphasis added).

(2) paying the lessor a higher rental for the remainder of the term").

Here, a Stipulation or Dismissal of Certain Claims and Order was filed on February 9, 2015, in which the claim asserted in Count II of the First Amended Complaint, that "Foley's performance and obligations under the Option are excused," was dismissed without prejudice. See Oahu Publ'ns., Inc. v. Abercombie, 134 Hawaiʻi 16, 26, 332 P.3d 159, 169 (2014) ("[A] dismissal without prejudice does not alter the legal relationship of the parties because the defendant remains subject to risk of re-filing.") (citations and internal quotation marks omitted). The pleadings and proof in this case raised one basic issue: whether the Trust was entitled to rental income from July 1, 2009 to April 27, 2015.[9]  The Final Judgment awarded the Trust $1,013,385.17 for rental payments from July 1, 2009 to April 27, 2015.  Because the Trust prevailed on the "disputed main issue," the Trust was the "successful party for the purpose of taxing costs and attorney's fees" under HRS § 607-14.  See Kaleikini, 129 Hawaiʻi at 461, 304 P.3d at 259; Oahu Publ'ns., Inc., 134 Hawaiʻi at 26, 332 P.3d at 169.  The Circuit Court did not abuse its discretion in awarding attorney's fees associated with Count II of the First Amended Complaint regarding the claim that the Trust's performance and obligations under the Option were excused.  See Ass'n of Apartment Owners of Discovery, 134 Hawaiʻi at 254, 339 P.3d at 1055.

*Non-assumpsit claims.*  BWC argues that "the fees incurred by the Trust should be apportioned between those expended on the assumpsit claims versus the fees expended on defending against the non-assumpsit claims," citing TSA Int'l

---

[9]     The Circuit Court's FOFs, COLs, and Order stated,

The ultimate issue to now be decided in this case is whether defendant BWC Hawaii, LLC, ("BWC") as tenant owed any rents to landlord, Lynn Brown and Warren Brown as successor trustees of the Foley Family Trust ("Trust") after BWC exercised an option to purchase the demised premise[s] on June 8, 2009. . . .

19

<u>Ltd. v. Shimizu Corp.</u>, 92 Hawaiʻi 243, 264, 990 P.2d 713, 734 (1999) (holding that in deciding to award fees under HRS § 607-14, the court must determine the nature of the lawsuit where both assumpsit and non-assumpsit claims are asserted).

BWC's argument is misplaced. The Circuit Court found in its Order Granting Attorney's Fees that the fees were "reasonable under the terms of the Lease[,]" and that the "request for fees is not based solely on assumpsit, but based on contract." BWC presents no argument why the attorneys' fees were unreasonable or unauthorized under the terms of the Lease. <u>See</u> <u>DFS Group, L.P. v. Paiea Props.</u>, 110 Hawaiʻi 217, 222, 131 P.3d 500, 505 (2006) (explaining that when a "'contract in writing that provides for an attorney's fee,' the determinative issue is whether the language of the lease authorizes the recovery of attorneys' fees in the present case") (quoting HRS § 607-14 (Supp. 1997)). BWC fails to demonstrate that the Circuit Court abused its discretion. <u>See</u> <u>Ass'n of Apartment Owners of Discovery Bay</u>, 134 Hawaiʻi at 254, 339 P.3d at 1055.

***Block billing.*** BWC argues that many of the fees "amount to improper block billing making it impossible for the lower court (or this Court) to determine the reasonableness of the time spent on the various tasks undertaken," citing <u>Haw. Ventures, LLC</u>, 116 Hawaiʻi at 475, 173 P.3d at 1132. BWC does not explain how improper block billing occurred under the authority it relies on. In <u>Haw. Ventures, LLC</u>, the Hawaiʻi Supreme Court found that "block billing" occurred because the court was unable to distinguish between compensable and noncompensable billing entries, not the reasonableness of the fees. <u>Id.</u>; <u>see</u> <u>Crowe v. Ass'n of Apartment Owners of Waikiki Marina Condo.</u>, Nos. CAAP-14-0000545 and CAAP-14-0001210, 2019 WL 1715767, at *5 (App. Apr. 17, 2019) (SDO) (explaining that <u>Haw. Ventures, LLC</u> was distinguishable because "the Circuit Court was examining the 'reasonableness' of the fees, not differentiating between compensable and noncompensable billing entries"). BWC does not offer any analysis or legal citations regarding how the

Circuit Court erred in awarding attorneys' fees based on block-billed time entries because the reasonableness of the time spent on various tasks could not be determined, and BWC fails to demonstrate that the Circuit Court abused its discretion. See HRAP Rule 28(b)(7); Ass'n of Apartment Owners of Discovery Bay, 134 Hawaiʻi at 254, 339 P.3d at 1055.

*Clerical/ministerial work.* BWC argues that the Trust improperly included "legal time entries reflecting billing for ministerial and/or clerical work," citing Jeremiah B. v. Dep't of Educ., Civil No. 09—00262 DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (holding that "[c]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate") (finding that communications regarding "hearing dates" and "due dates" are clerical in nature) (citation omitted).

The Circuit Court had the discretion to determine that the challenged fees were "reasonable." See Gailliard v. Rawsthorne, 150 Hawaiʻi 169, 178, 498 P.3d 700, 709 (2021) (explaining that it is within the court's discretion in determining whether a fee is reasonable and finding that proofing and revising a brief was reasonable). BWC does not explain how any of the challenged fees were unreasonable because of their alleged "clerical" or "ministerial" nature, and fails to demonstrate an abuse of discretion. See HRAP Rule 28(b)(7); Ass'n of Apartment Owners of Discovery Bay, 134 Hawaiʻi at 254, 339 P.3d at 1055.

## IV. CONCLUSION

For the foregoing reasons, we affirm the (1) July 19, 2017 Final Judgment Pursuant to Haw. R. Civ. P. 58 in Favor of Plaintiffs Lynn Brown and Warren Brown, in Their Capacities as Successor Trustees of the Foley Family Trust and Against Defendants BWC Hawaii, LLC, Thurston K. Robinson and Douglas M. Patterson; (2) June 14, 2017 Order Partially Granting Plaintiff's Motion for an Award of Attorney's Fees Against Defendants BWC Hawaii, LLC, Thurston K. Robinson, and Douglas M. Patterson,

21

**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

Jointly and Severally, Filed on March 8, 2017; (3) February 27, 2018 Order Granting Defendant's Motion for Review by the Court of the Order of the Clerk of the Court Taxing Costs in the Amount of $24,339.14, Filed February 22, 2017, and Awarding Costs in the Amount of $9,540.74; and (4) December 28, 2016 Findings of Fact, Conclusions of Law, and Order, all filed and entered by the Circuit Court of the Third Circuit.

DATED:  Honolulu, Hawaiʻi, February 27, 2023.

On the briefs:

Rebecca A. Copeland,
(Law Office of Rebecca A. Copeland, LLC),
for Defendants-Appellants
BWC Hawaii, LLC, Thurston K. Robinson, and Douglas M. Patterson.

Thomas T. Watts,
(Thomas Watts, Attorney at Law, A Law Corporation),
for Plaintiffs-Appellees
Lynn Brown and Warren Brown, as Successor Trustees of the Foley Family Trust.

/s/ Lisa M. Ginoza
Chief Judge

/s/Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge